Troxall et al. *vs.* Applegarth Garn. of Dunnock.

Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided March 3rd, 1866.)

T. F. TROXALL, WILLIAM KEYSER AND H. J. KEYSER *vs.* WILLIAM APPLEGARTH AND JOHN WHITTINGTON, GARNISHEES OF SAMUEL R. DUNNOCK.

EVIDENCE: PRACTICE.—Where a witness states that a party took possession of a vessel under a bill of sale, it is proper that the bill of sale should be produced.

———: ———: ATTACHMENT: DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE. The plaintiffs laid an attachment in the hands of a garnishee on the 21st of January, 1860. On the 20th of the same month the defendant had conveyed his interest in a vessel by bill of sale in trust for certain of his creditors, but the trustees did nothing towards the execution of the trust. On the 24th of September, 1859, the defendant had contracted to convey his interest in the vessel to the garnishee for a certain sum, and on the same day made a bill of sale to him of the vessel, under which no title passed, because it was not recorded in conformity with the Act of Congress. By the terms of sale the purchase money was to be paid, not to the defendant, but to the payment of certain debts due by him, one of which was due to the garnishee himself. And evidence was offered to show that the interest of the defendant in the vessel was to be held as collateral security for the payment of this debt, and to indemnify him for the payment of other debts due by the defendant on account of the vessel, which the garnishee assumed to pay, and did pay out of the purchase money. Upon the repayment of these sums to the garnishee by the defendant, the interest of the latter in the vessel was to be reconveyed to him by the garnishee. At the trial of the attachment case, HELD:

1st. That the effort on the part of plaintiffs to show fraud on the part of the defendant, because of the bill of sale and the deed of trust, even if sustained would not avail them, as there was no evidence to show that if the defendant meditated a fraud upon his creditors the garnishee had notice of it, without which he could not be affected by it.

2nd. That as the plaintiffs had not laid the attachment upon the vessel, but upon the proceeds of sale, they could not sustain their attachment without conceding the sale to and possession of the garnishee.

3rd. That there was evidence to go to the jury to prove that at the time the vessel was sold and delivered to the garnishee, there was a *bona fide* agreement between the defendant and the garnishee, that the latter should, in consideration of the price agreed on, pay certain debts due by the defendant, which were designated by him, amounting in the aggregate to the whole purchase money, and that this agreement was performed by the garnishee; and if the jury so found, this was a good defence to the attachment.

4th. That in this view of the case it was immaterial whether the bill of sale was under the Act of Congress ineffectual to pass the legal title as against the garnishee, as the agreement would be binding upon the defendant and protect the fund from attachment by his creditors.

5th. That as the attachment was laid on the fund in the hands of the garnishee, the right of the plaintiffs to recover must necessarily depend upon the state of the accounts between the defendant and the garnishee, and the effect of the agreement between them at the time the attachment was laid.

APPEAL from the Superior Court of Baltimore City.

The facts of this case are stated in the opinion of this Court.

The cause was argued before BARTOL, GOLDSBOROUGH and WEISEL, J.

*Robert J. Brent* and *James L. Brent* for the appellants.

The Court in granting the plaintiffs' 1st prayer had declared the unrecorded bill of sale inoperative as a conveyance against this attachment, and this point was properly ruled upon the following authorities in the State of Maryland. 1729, *ch.* 8, *sec.* 5. *Dorsey vs. Smithson,* 6 *H. & J.,* 63. *Clagett vs. Salmon,* 5 *G. & J.,* 346.

The Act of Congress is express, that all bills of sale passing title to vessels must be recorded in the Custom House. See Act of 1850, *ch.* 27. 9 Stats. at Large, 440. *Brightley's Dig., p.* 833, *sec.* 44.

This Act is constitutional, and regulates the whole subject of title to vessels under the power delegated to Congress, to "regulate commerce," as appears from the authorities hereinafter referred to.

This Act of Congress requires the title to be recorded in the Custom House, and does not regard the fact of possession by the purchaser of a vessel as any evidence whatever of title in him. *Thompson vs. Van Vechten*, 5 *Ab. Pr. Rep.*, 461. *Robinson vs. Rice & Moore*, 3 *Mich. Rep.*, 240. *Foster vs. Perkins*, 42 *Maine*, 175. *Reeder vs. The George's Creek*, 3 *Am. Law. Reg.*, 236.

It appears on the face of the bill of sale that this vessel had been previously registered in the Custom House, and was therefore liable to the provisions of the Act of 1850.

It will be contended by our adversaries that Congress did not intend to require a recorded bill of sale in cases where the title, as at common law, passed by a change of possession, and where, as in this case, there was notice on the files of the Custom House to creditors by the registration and oath, showing the vessel to be the property of Applegarth.

But it will be seen that this registration only took place on the 26th of September, 1859, two days after the execution of the bill of sale whereby Applegarth became supposed owner. The registration does not affect the transfer of title, but is matter "*ex post facto*" the acquisition of title, and presupposes that the party registering the vessel has already become owner; whereas the Act of 1850, ch. 27, passed by Congress, strikes directly at the transfer itself, unless it be by bill of sale recorded in the Custom House.

By virtue of this last Act, Applegarth had no title to register, and his registration of the "Union State," on the 26th of September, 1859, is no more than if anybody

else had registered her as his property, and all the cases which may be cited by the appellee's counsel anterior to the Act of 1850, are ignored by its clear and explicit provisions, based on a public policy requiring all transfers of title to be recorded in the Custom House.

Such registration of a ship never was considered at common law as any notice or change of possession sufficient to prejudice the claims of creditors to avoid a bill of sale for fraud. *Robinson vs. McDonell,* 2 *Barn. & Ald.,* 136.

The enrollment is merely to give a national character to the vessel. 7 *Johns.,* 308. *Thompson vs. Van Vechten,* 5 *Ab. Pr. Rep.,* 460.

This third prayer of the plaintiffs could not be legally rejected, as there was evidence from which a jury might have inferred that the vessel was secretly and conclusively transferred by Dunnock to Applegarth for the purpose of covering the said interest from his creditors.

We do not see on what principle Applegarth can be protected in paying over Dunnock's money to his creditors after we had attached it in his hands, unless he can show that he (the garnishee) had become responsible for these debts before the attachment, of which there is no proof. The attachment was necessarily a revocation of the request of Dunnock to pay certain debts of his, and all subsequent payments were "*de son tort.*" We therefore insist that the consideration money of his supposed purchase was not paid up by the garnishee in full at the date of our attachment, and his very attempt to charge against us the two items, amounting to $1,265.42, is evidence of collusion between the garnishee and Dunnock.

But stronger evidence of collusion and fraud was the basis of our third prayer, erroneously rejected, and it will be found in the machinery and contrivance of the bill of sale of the 24th of September, 1859.

The third prayer of the plaintiffs should have been granted, therefore, even if it had omitted the latter part, which requires the jury to find the additional fact, that possession did not accompany the bill of sale.

If it ought to have been granted without this additional fact it was not prejudiced by requiring the jury to find an additional but immaterial fact. *Windsor vs. McClellan*, 2 *Story's Rep.*, 497, 498.

The authorities establish that the priority of liens will be determined where the subject in controversy is incapable of delivery by superior diligence in giving notice to the party actually in possession or control of the fund. *Judson vs. Corcoran*, 17 *How.*, 612. *Spain vs. Hamilton*, 1 *Wallace's Rep.*, 604.

This principle seems analagous to the assignment or transfer of shares in a vessel by part owner, and is clearly signified to be the law in such cases by Judge STORY. 2 *Story's Rep.*, 497, 498. Therefore, it results that Applegarth had not perfected his title by taking possession under his bill of sale, until at least after the vessel had made a foreign voyage.

The fourth prayer of the plaintiffs should have been granted, because it is based on the same evidence of fraud and collusion which we have discussed in reference to the third prayer. That the fraudulent grantee is chargeable to the attaching creditor, with all money received by him under the void instrument, as profits or otherwise, is established law in this State. 2 *H. & G.*, 26.

If it be said that our prayers were properly refused, because assuming the nullity of Applegarth's bill of sale, yet the title of Dunnock, passed prior to our attachment, to the trustees named in his deed of trust dated 12th of January, 1860, I answer that the appellant, as attaching creditor can avoid that deed because it was not recorded in

the Custom House, and is therefore inoperative to convey this vessel as well as for the reasons herein stated.

We will now consider the prayers granted at the instance of the garnishee, as follows : Fourth prayer of garnishee. This prayer is obnoxious to several objections : It seeks to bolster up the secret and collusive bill of sale by asserting that although the garnishee received three-fourths of the earnings of the vessel, yet if the jury find that he took possession of said brig as owner of three-fourths at the date of said bill of sale, and received such earnings as such owner, under an agreement made *bona fide*, that he would pay certain debts, and that he has paid said debts, then he is entitled to recoup the debts so paid against said earnings, and the plaintiffs are not entitled to recover on account of said earnings, unless the jury find that the said earnings and the value of said three-fourths interest together exceed the amount of debts so paid. The radical vice in this prayer is the assumption that a secret agreement between the debtor and his vendee can be set up in bar of the creditors if the jury find it to be in good faith, however secret and unknown. Being predicated on a supposed delivery of possession to the garnishee, at the date of the bill of sale, it is clearly erroneous, as there is no proof that the appellee took possession of the brig on that day.

The law is clear, that where an assignment is made for the benefit of creditors who are not parties and who have not notified the assignee that they accept the benefit of the assignment, that it is competent to the debtor to change its terms and appropriate the funds created by the assignment as he may please. 2 *Story's Eq.*, sec. 972, n. 3, 1036, a. 1045,-6,-7. *Drake on Atta.*, sec. 673. *Wallwyn vs. Coutts*, 3 *Meriv.*, 707. *Holland vs. Prior*, 2 *M. & K.*, 492. *Garrard vs. Lauderdale*, 3 *Sim.*, 1. *Wilson vs. Carson*, 12 *Md. Rep.*, 73, 74.

A special fund is created ; either the creditors, provided for by the assignment, have a specific lien on the definite and specific fund, or the assignee is personally liable to them. But if the assignor can control the fund and give further directions, neither the specific lien nor the personal liability could exist. The creditors provided for might have ratified the agreement, and obtained the assent of the assignee to hold the fund for them, but until they did so the fund in his hands belonged to the assignor, was subject to his further directions, and of course liable to attachment. *Tiernan vs. Jackson,* 5 *Pet.*, 580. *Story on Bailments, sec.* 210. *Kalkman vs. McEldery,* 16 *Md. Rep.,* 56. *Story on Agency, sec.* 456. *Lane vs. Husband,* 14 *Simons,* 656, (37 *Eng. Cond. Ch. Rep.*)

The 6th prayer affirms the same principle as the 4th, and completely ignores the time of payments as made by the garnishee, but in addition contains and asserts this proposition, that if the garnishee be responsible for the three-fourths value of the brig, he is not chargeable with her earnings, but only with legal interest on the value of the brig. In other words, if he be a faithless trustee, and converted the trust property to his own use, he can be only chargeable with interest on the value of the trust, and is not held accountable for profits beyond the interest, derivable from the use of the trust funds.

The garnishee claims and asserts that he purchased the brig for $7,500. In that case he would simply owe the purchase money, and he could' in no way be responsible either for the value of the brig or her earnings, unless he acquired the brig by way of mortgage, in which event he would be responsible for the value of the brig and for her earnings. Yet this prayer, assuming that the garnishee might be responsible for the value of the brig, which is an assumption that she was only conveyed by way of mortgage, yet instructs the jury that they can take no account of the

earnings of the vessel, and that the tortious trustee is only responsible for legal interest and not for actual profits received.

This prayer erroneously assumes, also, that there was evidence of the garnishee having taken possession of the vessel at the date of his bill of sale ; and then attempts to limit the liability of the garnishee to the value of said three-fourths interest, and to exempt him from all liability for the earnings received, which is not only inconsistent with the defendant's 4th prayer, as granted, but with the principle ruled by this Court in 2 *H. & G.*, 26.

The effect of these rulings was practically to overrule the Act of Congress requiring bills of sales to be recorded, for the Court while annulling the bill of sale as a conveyance, allowed the garnishee to evade the Act of Congress, by setting up a pretended possession under the void deed, and which was merely taken as security for claims to amount of $5,000.

*William S. Waters & John H. Thomas* for the appellee.

The refusal to grant the third prayer of the plaintiffs is the first ground of exception on the part of the appellants. That prayer is as follows : " If the jury find from the whole evidence that the said Dunnock held an interest of three-fourths in the brig " Union State," and that the same was secretly and collusively transferred to the said Applegarth by said Dunnock, for the purpose of covering the said interest from the creditors of the said Dunnock, and further, that no actual, open and visible possession of said brig accompanied and followed the alleged bill of sale offered in evidence and dated the 24th of September, 1859, that the said interest of said Dunnock in said vessel remains liable, and is chargeable under the attachment issued in this case."

This prayer was properly refused because there was no evidence upon which to base it. The plaintiffs proved by

Abbott that Applegarth went into possession. This is the plaintiffs' own theory of the case. He cannot sustain the attachment without possession. All the other witnesses proved the fact. Moreover the jury might have been deceived by the terms " actual and visible possession," used in the prayer. There is no evidence of secrecy, collusion, or intent to defraud creditors in fact. Nor does the hypothesis of the prayer rest upon the presumption that Applegarth was aware of a secret intent on the part of Dunnock, if such existed.

The second ground of exception is based upon the refusal to grant the fourth prayer of the plaintiffs. This prayer is as follows :

"If the jury find from the whole evidence that the bill of sale offered in evidence, was made with intent on the part of the said Dunnock to hinder, delay and defraud his creditors, and at the time of the execution of the said bill of sale such intent was known to the said Applegarth, then the said bill of sale is inoperative and void as against this attachment, and the said Applegarth is chargeable as garnishee in respect to all moneys had and received by him at the service of said writ of attachment, or since, under and by virtue of said fraudulent bill of sale."

This prayer is liable to the same objection. There is no evidence of fraud in fact in the bill of exceptions. No inference of such an intent can be drawn from the facts of the case. Moreover, the prayer seeks to make Applegarth chargeable " as garnishee in respect to all money had and received by him" in respect of the brig. If he was chargeable with the earnings of the brig, it must be the nett earnings and not the gross receipts.

The next ground of exception is the granting the fourth prayer of the garnishee. The necessity for this instruction on the part of the garnishee grew out of the granting of the first prayer of the plaintiffs. The Court having

instructed the jury that the bill of sale passed no title as against the attachment, because it was not recorded in the Custom House, this prayer is based upon the correctness of this instruction ; and as there was no fraud in fact, but as the brig came into possession of the garnishee by a *bona fide* agreement, and the garnishee having in good faith complied with the agreement, and paid large sums of money on account of it, the prayer asserts that while he should be charged with the value of the brig and her earnings, yet he should be entitled to recoup what had been so paid by him in good faith against the value of the brig and her earnings, and if there was no excess over such payments there should be no verdict against him.

It is apparent that if the bill of sale in question did pass a good title as against the attachment, and the instruction of the Court was wrong in this respect, the judgment ought not to be reversed, even if the fourth prayer upon the theory of this instruction was improperly granted.

It will be maintained that the first instruction of the plaintiffs was wrong. This instruction is based upon the Act of Congress of 1850. (*Brightly's Digest, pp.* 833, 834.)

1st. This instruction precludes all evidence of notice mentioned in the Act of Congress. It is in evidence by the plaintiffs that the garnishee went into possession, and his attachment concedes possession. Without possession by the garnishee he would not be chargeable in reference to the vessel. The records of the Custom House were sufficient to show title. Anything which would put the party upon inquiry is sufficient notice. Under the Acts of 1729 and 1846, possession is regarded as sufficient evidence of notice. *Ruckman vs. Mott*, 6 *Law Rep.*, 398. *Bryan vs. Hawthorne*, 1 *Md. Rep.*, 519. *Gill vs. Griffith*, 2 *Md. Ch. Dec.*, 270. *Hudson & Warner vs. Vance*, 2 *H. & G.*, 429.

2nd. The plaintiffs are not in position to call in question the bill of sale offered in evidence under the Act of Con-

gress. The Act names "bills of sale, hypothecations, mortgage or conveyance," as not being valid. The lien by bottomry is excepted. This is an hypothecation. There is no other exception named in the Act. It has been decided, it is true, that admiralty liens by the general maritime law need not be recorded as provided by the Act. That they are neither bills of sale, mortgage, hypothecations or conveyances within the meaning of the Act, and that although not recorded themselves they are good against recorded deeds. But the same cannot be said in regard to the lien of an attachment, a right having force only by State statute. The plaintiffs have no such rights as make their position better than the garnishee's. Whatever right they have is no more a matter of record than that of garnishee, and it is under the statute equally as incomplete and invalid.

3rd. The lien acquired by the service of the attachment like that of a fi. fa. can work no wrong. They do not place those who obtain them in the place of *bona fide* purchasers for value. A mere equity, although secret and unknown to the holders of them, will be good against them. *Taylor vs. Wheeler*, 2 *Vernon*, 564. *Tieman vs. Poor et. al.*, 1 *G. & J.*, 216. *Brundige vs. Poor*, 2 *G. & J.*, 1. *Woods et. al.*, *vs. Fulton & Stark*, 4 H. *& J.*, 329. *McMechen & Sullivan vs. Maggs*, 4 *H. & J.*, 132.

4th. The attachment in this case is not a lien upon the vessel. It is served upon the garnishee, and it affects rights as between the garnishee and defendant. It is neither *jus in re*, nor *jus ad rem*.

5th. The Act of Congress only enables subsequent purchasers, mortgagees, or those who have acquired title equal in dignity to those named in the Act, and who have taken the precaution to pursue the Act. *Thompson vs. Van Vechten*, 5 *Ab. Pr. Rep.*, 461. *Foster vs. Perkins*, 42 *Maine*, 173.

6th. The policy of these Acts of Congress is the same as that of the Acts of the State of Maryland of 1729 and 1846. When possession passes the Act does not apply. They are merely designed to be a protection in favor of persons who incur responsibilities for want of knowledge of change of title. *Gill vs. Griffith*, 2 *Md. Ch. Dec.*, 270. *Waters vs. Dashiel*, 1 *Md. Rep.*, 455.

7th. The title to vessels can be changed without bill of sale, and in this case it must be presumed that the bill of sale was placed for record in the Custom House office. A certificate of registry was issued which can only be granted upon a bill of sale in the office. *Brightly's Digest, pp.* 828, 319. 1 *Parsons on Mar. Law*, 47, &c.

8th. If the bill of sale be void as against this attachment, then all the interest which could have been reached by the attachment passed by virtue of the deed of trust of 12th January, 1860.

9th. The bill of sale of the 24th September, 1859, was from James Hooper, A. R. Wallace, and the defendant, Samuel R. Dunnock, each of whom conveyed one-fourth, and the failure to record the bill of sale could not upon any construction of the law leave but one-fourth of the vessel exposed to attachment. The title of the other three-fourths is in other persons.

10th. The one-fourth interest of Dunnock conveyed by the bill of sale to the garnishee, of 24th September, 1859, was at the same time mortgaged to Didier by mortgage dated August 27th, 1859, and had never been released, and before it was paid off by the garnishee, his bill of sale was recorded. From which it results that the attachment affected an equitable interest only, and the garnishee having subsequently paid the mortgage, has a claim superior to any that can be acquired by the attachment.

11th. To give the Act of Congress the scope contended for would be to give the power to Congress to regulate sales

and transfers of property to an extent beyond that of regulating commerce, which power was not intended to be assumed by Congress. *Gibbons vs. Ogden,* 9 *Wh.*, 1. *Maguire vs. Card,* 21 *How.*, 248.

12th. The plaintiffs in this case gave in evidence possession under the bill of sale, and the bill of sale itself. They cannot therefore impeach it.

13th. The next ground of appeal is the granting of the sixth prayer of the garnishee with modifications.

This instruction is obscure but its meaning is clear. It is granted, rejecting all of it after the word " but," next after the word " Applegarth," in the third line from the end of the prayer.

The same reasons exist for granting this prayer as are given for granting the fourth prayer.

14th. The Act of Assembly of 1834, ch. 79, sec. 3rd, provides in terms that no " conveyance or transfer" of property, except by recorded deed, shall prevail as against attaching creditors. This language is at least as strong as that used in the Act of Congress of 1850. Yet even symbolical delivery was held to effect a transfer of title as against attaching creditors. *Wells vs. Briscoe,* 3 *Gill,* 406.

15th. Possession of the vessel by the garnishee and the taking out of a register in his own name, gave notice of his title to the appellant, so as to bring the case within the express terms of the exception in the Act. *Baynard vs. Norris,* 5 *Gill,* 468. *Mayor & City Council of Balto. vs. Williams,* 6 *Md. Rep.,* 236, and note, 274. *Williams vs. Banks,* 11 *Md. Rep.,* 198. *Cook vs. Kell,* 13 *Md. Rep.,* 493 *Farquharson vs. Eichelberger,* 15 *Md. Rep.,* 63–73.

16th. Even if the dry legal title to the vessel remained in the defendant, the garnishee paid the purchase money, took possession, and in every way exercised acts of ownership. These circumstances vested in him an equitable title which will prevail as against an attaching creditor. *Black vs. Zach-*

*arie,* 3 *How.,* 510 to 513.   *Drake on Attachments, secs.* 522, 526 and 527.   *Houston vs. Nowland,* 7 *G. & J.,* 480, 493. *Alexander vs. Ghiselin,* 5 *Gill,* 138, 180.   *Price vs. McDonald,* 1 *Md. Rep.,* 402 and 414.   *Gibson vs. Stevens,* 8 *How.,* 384.

17th. There is no proof that the garnishee ever realized anything from the earnings of the vessel—the agreement between him and the defendant *bona fide* appropriating all he was to pay to certain debts of the defendant is one which the attaching creditors cannot defeat. An attaching creditor can only recover from the garnishee what the defendant could if the action had been brought by the latter. *Poe vs. St. Mary's College,* 4 *Gill,* 499.   *Balto. & Ohio R. R. Co. vs. Wheeler,* 18 *Md. Rep.,* 373.   *Peters vs. Cunningham,* 10 *Md. Rep.,* 554. *Drake on Attachments, (Ed. of 1858,) pp.* 382 and 420, §§ 485, 517, *etc.*

18th. The instruction contained in the appellee's fourth prayer, which was granted, entitled the appellant to condemn three-fourths of the value of the vessel and her earnings together, over and above the debts of the appellant, which the appellee had paid in fulfillment of a *bona fide* agreement under which he had received such earnings if he ever received any. This was the utmost of the appellant's rights, in any possible view of the facts, as will be seen by reference to the authorities cited under the last point.— There being no proof that the appellee received any of her earnings, he of course could not be responsible for them ; he, and not the appellant, was prejudiced by allowing the jury, as an element of his liability, to find that he had received such earnings.

19th. The appellee's fifth prayer, making the value of the vessel, when he took possession, and interest thereon the limit of his responsibility, ought to have been granted as offered. The proviso, which the Court added, allowed the jury to hold him responsible in their discretion, either

for the value of the vessel, or her earnings. The appellant will hardly claim that he was entitled to her value when taken possession of, and her subsequent earnings also.

20th. The defendant had himself, before the conveyance to Applegarth, but an equitable interest in the vessel, which could not have been taken under execution, and such interest was not therefore liable to this attachment, specifically or in the hands of the garnishee. *Drake on Attachment*, (*Edition of* 1858,) *pages* 192, 193, 194, §§ 244 245, *and page* 376, §§ 479, 457 *and* 458. *Harris vs. Alcock*, 10 *G. & J.*, 251. *Rose vs. Beavan*, 10 *Md. Rep.*, 467. *Billman vs. Tudor*, 1 *Pick.*, 399.

21st. The Court correctly required the appellant to produce the bill of sale, of which his witness spoke, to show what amount of interest the appellee took possession of and in what capacity he so took it. If it erred, however, in this particular, and its ruling in reference thereto was intended to be the ground of the first exception, the appellant was not prejudiced thereby, inasmuch as the granting of his first and second prayers held that said bill of sale was void as to him, and interposed no obstacle to his right of recovery. *Leffler vs. Allard*, 18 *Md. Rep.*, 552.

GOLDSBOROUGH, J., delivered the opinion of this Court.

The appellants, the plaintiffs below, obtained a judgment against Samuel R. Dunnock, in 1859, for $1,015, and by way of execution issued an attachment out of the Superior Court of Baltimore City on the 20th of January, 1860.

This attachment was, on the 21st of January, 1860, laid on certain alleged rights and credits of the defendant Dunnock in the hands of William Applegarth one of the appellees. He appeared as garnishee, and pleaded *nulla bona*. At the trial, the plaintiffs moved the Court to order a *non pros.* as to John Whittington ; the same was ordered and

the cause conducted against Applegarth as sole garnishee. At the trial it appeared by the evidence that Applegarth on the 24th of September, 1859, contracted with Dunnock to purchase his interest in the brig "Union State" for $7,500. This interest Dunnock designed to convey by a bill of sale executed on the day of the contract, and embracing three-fourths of said brig.

The bill of sale was signed by James Hooper, A. R. Wallace and Samuel R. Dunnock. It was however not recorded in the Custom House in conformity with the Act of Congress, until the 22d day of February, 1861, and upon the prayer of the appellants, the Court ruled that no title passed to the appellee, Applegarth, by said conveyance as against the attachment.

Besides the bill of sale which the plaintiffs produced by order of the Court, they read in evidence a deed of trust from Dunnock to the appellees, acknowledged on the 20th day of January, 1860, by which he conveyed all his property for the benefit of his creditors according to the terms therein expressed, the plaintiffs stating that they offered it in evidence with the declaration that they would impeach it afterwards. They then proved by Mr. Abbott that the trustees had done nothing towards the execution of said deed of trust.

They further proved by Abbott, that the whole $7,500 stated in the bill of sale, was due to Dunnock for his interest in said vessel, which was really three-fourths thereof, none of which was to be paid by Applegarth to Dunnock, but to be applied by the garnishee to certain debts of Dunnock; that on the day of the date of the bill of sale, Dunnock owed Sterling & Ahrens $4,311.29 on account of said vessel, and had previously given therefor four notes endorsed by W. Applegarth & Son for different amounts at different periods of payment. And also that a note

dated 14th of September, 1859, for $676.13, endorsed by
Applegarth & Son, was given for materials supplied to
said vessel, and was also paid out of said purchase money,
and that the garnishee was to pay out of the $7,500 any other
debts due by Dunnock on account of the vessel. The
plaintiffs then proved by Mr. Skinner, that about the time
of said sale, Applegarth told him he had a claim against
the "Union State" of from $4,800 to $5,000, and held
her as collateral security for that amount, and when that
was paid, Dunnock was to resume possession, and the brig
was chartered at $600 a month, and that he had assumed
Dunnock's debts to the amount of $4,800 or $5,000 at that
time. The garnishee then proved by Samuel R. Dunnock,
that he was the owner of three-fourths of the "Union
State" previous to his sale to Applegarth. That the sale
took place on the 24th of September, 1859, and on the same
day he gave the bill of sale referred to, and at the same
time handed over to him all the papers connected with
her. That at the time of the sale the brig was in the port
of Baltimore, held and navigated by Captain Foxwell,
who was one-fourth owner, and master for a voyage then
about to commence under the direction of Applegarth, as
three-fourths owner, and after that voyage, Captain
Martin was put in charge as master by Applegarth.

That the consideration for the sale was $7,500, to be ap-
plied by Applegarth in payment of certain debts which
witness owed on account of the brig, and the balance to be
applied to such debts due by Dunnock and Weatherly to
Applegarth as witness had assumed ; and being shown a
statement of sums paid by Applegarth & Son, amounting
to $7,451.58, he was asked "if the debts in the said paper
enumerated, were those which Applegarth was to pay
under the agreement aforesaid, between them?" replied
that they were, and that each and all of said debts had

been passed upon by him as debts to be paid by Apple-
garth under said agreement, and in addition thereto, the
tax bill amounting to $352.22, chargeable to the brig, was
to be paid as part of the consideration of sale.    That all
the bills due upon the brig so to ·be paid by Applegarth,
were mentioned to him at the time of the sale, but the
precise amount thereof not being known at that time, was
only approximated; and that although the witness was
owner of three-fourths of the brig, all the bills for her
were charged to him, yet after the sale he was never called
upon to pay them.

The witness further stated, that there was a verbal agree-
ment between him and Applegarth, that if Mr. Campbell
should return from Venezuela and pay him what he owed
him, he would be able to *buy back* the brig for $7,500, in
which case he would allow Applegarth 2½ per cent.    That
on the day of sale, witness went with Applegarth, canceled
the insurance in his own name, and Applegarth took out
one in his own name.    This change of insurance is also
proved by Montague, as taking place on the day of sale.
Dunnock further testified, that at the time of the service of
the attachment, Applegarth did not owe him on account of
the brig, or on any account, but that he owed Applegarth.
That when the sale was made he handed to Applegarth
such bills of lading for the cargo as he had signed.

The garnishee further proved by Mr. Didier that he had
sold to Dunnock one-fourth of the brig in September, 1859,
for $2,250, and took a mortgage on the brig to secure the
payment of $766.08; this claim as appears by the evidence,
was paid by Applegarth.

The garnishee proved by his clerk, Mr. Mitchell, that
debts of Dunnock to the full amount of the consideration
named in the bill of sale, were paid by him.

He then read in evidence the permanent registration of
the vessel in his name as three-fourths owner, and Foxwell

Troxall et al. *vs.* Applegarth Garn. of Dunnock.

as one-fourth owner, dated the 26th of September, 1859. We now proceed to dispose of the questions arising upon the appellants' exceptions.

1st. The language in which the first exception is stated is somewhat obscure, but we suppose it was designed to raise the question whether the Court below erred in requiring the production of the bill of sale. In our opinion the action of the Court was correct. The witness having stated that the appellee, Applegarth, had taken possession under a bill of sale, it was proper that the paper should be produced, but if this were not so, the appellants were not prejudiced by the Court's action, inasmuch as by their first prayer which was granted, the jury were instructed that the bill of sale passed no title to the grantee, as against the attachment. The correctness of the first prayer depends upon the true construction of the Act of Congress of 1850, upon which able and elaborate arguments have been made, but in our opinion its determination is not material in the decision of this appeal, and therefore without meaning to express any opinion upon that question, we shall assume that the ruling on this point, which was favorable to the appellants, was correct and shall decide the other questions in the case upon the theory that the bill of sale was inoperative to pass the title as against the appellants attachment.

The second prayer of the appellants which was granted, gave to them the full benefit of Skinner's testimony, the effect of which was by that prayer properly submitted to the jury.

The appellants' third prayer.—The effort of the appellants to show fraud in the conduct of Dunnock, because of the bill of sale and the deed of trust is not sustained. Indeed we see nothing in the evidence from which it would be competent for the jury to find any fraud in the conduct in the appellee, nor is there any evidence to show that if Dunnock meditated a fraud upon his creditors, the appel-

lee had notice of it, without which he could not be affected. See *Waters, lessee, vs. Riggin,* 19 *Md. Rep.,* 536. The third prayer of the appellants was therefore properly rejected. We have said there was no evidence of fraud to justify that portion of the prayer, and the other proposition that if "no actual, open and visible possession accompanied and followed the bill of sale, then the interest of Dunnock in said vessel remains chargeable, and liable under this attachment," is without evidence to support it. The appellants' own witness, Abbott, testifies that Applegarth went into possession. Dunnock testifies that he delivered up the papers connected with the vessel on the day of sale ; that on the same day the insurance was changed, and that the appellee had placed Captain Foxwell on board as master, for the voyage about to be commenced. In fact the appellants cannot sustain the attachment without conceding the sale to, and possession of the appellee. They have not laid the attachment upon the vessel, but on the proceeds of sale, and for the same reasons the fourth prayer of the appellants was properly rejected. In granting the fourth prayer of the appellee, and his sixth prayer with the modification, the Court below, in our opinion, correctly announced the law of the case. There was evidence to go to the jury to prove that at the time the vessel was sold and delivered to the appellee, there was a *bona fide* agreement between Dunnock and the appellee, that the latter should, in consideration of the price agreed on, pay certain debts due by Dunnock, which were designated by him, amounting in the aggregate to the whole purchase money, and that this agreement was performed by the appellee, and if the jury so found, this was a good defence to the attachment.

In this view of the case, it is quite immaterial whether the bill of sale was under the Act of Congress, ineffectual to

pass the legal title as against the appellants ; the agreement would be binding upon Dunnock and protect the fund from attachment by his creditors. Here the attachment was laid on the fund in the hands of the appellee, and the right of the appellants to recover, must necessarily depend upon the state of accounts between Dunnock and the appellee, and the effect of the agreement between them *at the time the attachment was laid.* In the case of the *Balt. & Ohio R. R., garn. of Cen. Ohio R. R., vs. Wheeler,* 18 *Md. Rep.,* 378, this Court said "the liability of a garnishee in respect of property of a defendant in his hands, is to be determined, ordinarily, by his accountability to the defendant on account of the property. If, by any pre-existing *bona fide* contract, that accountability has been removed or modified, it follows that the garnishee's liability is correspondingly affected, for it is well settled, that garnishment cannot have the effect of changing the nature of a contract between the garnishee and the defendant, or of preventing the garnishee from performing a contract with a third person."

*Judgment affirmed.*

( Decided March 13th, 1866.)