# ALBERT S. J. OWENS *vs.* HOPE H. BARROLL, TRUSTEE.

*Pro Forma Decree—Assignment of Fund by Distributee of an Estate to Trustee—Priority between Assignments— Ex parte Order Directing an Audit—Costs on Appeal.*

When one of several parties to an equity cause files an answer in which he submits his rights to a Court, and also as solicitor for another party, consents to a *pro forma* decree, he cannot afterwards object, on appeal from such decree, that it was invalid because he had not consented to it.

When one of two trustees of an estate, having the trust funds in his hands, mingled with his own money, pays a debt due by A, a distributee of the estate, with the express understanding that whatever is distributed to A shall be applied to that payment, neither A nor any one claiming by subsequent assignment from A, can demand payment of the same sum from the other trustee.

In order to constitute a valid assignment in equity of a fund, no formal writing is necessary.

An *ex parte* order of Court directing the auditor to audit to the assignee of a distributee of an estate the fund that may become due to such distributee, has no effect upon the rights of a party having a superior claim to that fund.

Where a *pro forma* decree was passed without the express consent of the appellant, but under such circumstances as made it binding upon him, and the decree is affirmed upon appeal, he will not be required to pay the costs of the record or the costs of the other party in this Court.

Appeal from a *pro forma* decree of the Circuit Court for Queen Anne's County.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, ROBERTS and BOYD, JJ.

Md.]                          Opinion of the Court.

*Joseph C. France* (with whom was *Albert S. J. Owens*
on the brief), for the appellant.

*James P. Gorter*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This appeal is taken from that part of the *pro forma*
decree referred to in the opinion filed in this term in
the case of *Barroll, Trustee* v. *Forman et al.*, which deter-
mined that Barroll was not required to pay the amount
audited to Florence M. Rasin, widow, because it had
been paid by A. R. Weedon, his co-trustee. Mrs. Rasin
consented in writing to relinquish her right of dower in
the real estate of which her husband had died seized,
and to accept in lieu thereof the money for the same as
fixed and determined by law. On the 21st day of
August, 1893, she executed an assignment to the ap-
pellant, whereby she undertook to assign to him all her
right, title and interest in and to the one-ninth of the
amount of sales of the property sold by Barroll and
Weedon, trustees, and directed them to pay to the
appellant " all amounts of money due, or which may
hereafter become due," by reason of her interest in
the proceeds of sale, in lieu of her dower. The appellant
assigned his interest to I. Freeman Rasin, who filed a
petition asking the Court to direct the auditor to audit
to him, instead of Mrs. Rasin, the amounts of money
to which she would be entitled. On the 4th day of
September, the Court passed an order to that effect.
The audit had been stated as of September 1st, and the
amount allowed Mrs. Rasin in lieu of dower ($416.73)
was distributed to her. In the petition of October 12,
1895, filed by Barroll, referred to in the other case, he
made I. Freeman Rasin a party, who filed an answer
stating that he had reassigned the claim to the appel-
lant, and hence had no further interest in it. Owens
also filed an answer, together with the reassignment to
him.

It is contended by the appellant that he is not a party
to the agreement upon which the *pro forma* decree was

based, that " the validity of his claim was not in issue under the pleadings, nor had he notice that it could be affected by any decree, except in so far as its ultimate payment depended largely upon the decision of the question of Mr. Barroll's liability to make good the defalcations of Weedon, his co-trustee." In the petition of October 12, 1895, Barroll, in giving a history of previous proceedings, orders, etc., stated that Weedon had undertaken to reduce his liability for the amount included in the audit by different sums therein mentioned, amongst others " by $416.73, the amount due to the widow, which he said she had agreed he should retain," and that the Court had in its order of August 10th, 1894, said " the Court at final hearing will determine as to the final application of such sums as will be due Mrs. Florence M. Rasin." The appellant in his answer admitted the petition so far as it correctly recited the proceedings, but not as to the allegations of facts therein, nor the inferences of the petitioner, alleged that it was the duty of the petitioner to pay out the money already audited and to have the balance of sales distributed and to execute the decree, so far as necessary to pay all just claims against the property, and concluded as follows: " and that it is agreeable to him, and he thinks it right and proper for this Court to take all necessary and proper steps to have the question involved in this controversy and said cause finally and speedily settled."

The appellant was examined as a witness in the case—not with reference to his own claim, it is true, but concerning one of those involved in the controversy. He, as one of the attorneys of Robert J. Reynolds, signed the agreement made by the solicitors by which it was agreed that the case upon which the audit was made and five other cases connected with the controversies, should be set for argument on the second day of October, 1897. It was therein agreed " that the Court shall pass such orders or decrees in said cases as may be deemed proper and that the purpose of this agreement is to obtain a speedy settlement and disposition of aforesaid cases by

having the aforesaid testimony so far as relevant, considered therein as though taken by the examiner in each of them, and thus avoiding any unnecessary expense," and the right of appeal was reserved to any of the parties entitled to an appeal.  A re-argument having been ordered, by reason of the fact that the official term of JUDGE WICKES, who sat in the cases, had expired before they were determined the agreement for a *pro forma* decree was made.  It is true that the appellant did not sign that agreement, but he had consented by his answer to submit the question he was interested in to the Court, and had as solicitor for another party agreed to submit the several cases.  One of the very questions reserved for decision at the final hearing was that concerning this fund.  The only possible injury that could have been done him was owing to the fact that the agreement provided that the *pro forma* decree should disallow his claim, but as his appeal was in ample time no injury has in fact been done him if that part of the decree is right, unless possibly as to the costs.

We must therefore determine whether that part of the decree is correct.  We do not understand the question of set-off to be in any wise involved, as contended by the appellant.  Of course if there was nothing disclosed by the record but the fact that Mrs. Rasin owed Weedon a sum of money, and Weedon and Barroll as joint trustees owed her the amount audited, the latter would have no right to claim as a set-off against the amount thus audited, the indebtedness of Mrs. Rasin to Weedon.  We have determined in the other appeal spoken of that Barroll is responsible for the money included in that audit, except so far as it has been paid out or so appropriated as to entitle him to credit.  If Weedon had actually paid Mrs. Rasin before notice of assignment of her claim, it could not be pretended that she could still require either the two trustees or Barroll to pay it over again, simply because it was audited to her. It would be incumbent upon the trustees, or the trustee on whom the demand was made, to show that it had been paid or in some way properly satisfied.  The testi-

mony of Weedon is that Mrs. Rasin owed him a large amount for money advanced and personal property, that she gave him a note for $1,300.00 which was discounted by the bank, renewed several times and finally paid by him " with the understanding that whatever was allowed to her in the audit should go on the note." The last renewal was dated April 27, 1892, payable six months after date, was filed by him in this case and according to his testimony paid in full by him. This was after the sales had been made and her agreement to accept her share of proceeds of sales in lieu of dower executed. The note matured after the money with which Barroll was charged in the audit had been received by Weedon and long before the assignment to the appellant was executed by Mrs. Rasin. There is not a particle of evidence in the record in contradiction of his testimony, and when it was taken it was no longer a question as to whether he should pay it, but whether Barroll should be responsible for it. The question for our determination therefore is simply reduced to this. If one of two trustees having the trust funds in his hands, which were mingled with his own money, pays a debt due by a person entitled to a portion of that fund with the express understanding that whatever is distributed to her shall be applied to that payment, can she, or any one claiming her distributive share under a subsequent assignment of it, require the other trustee to pay it again? We must unhesitatingly answer that in the negative under the circumstances of this case. It is not a question of whether there is an equitable lien on the fund, for it is not a lien but an advancement—a payment —that is claimed. Payment by Weedon by the direction and consent of Mrs. Rasin to the bank, the holder, is as binding on her as payment to her would have been. No formal assignment in writing from her to Weedon is necessary. The case of *Poe* v. *Snowden and Denny, Trustees*, 70 Md. 383 (one of the cases cited by the appellant), would seem to very clearly recognize the right of the trustee to apply the funds in his hands to an individual debt due to him, provided it be done by the

special assignment or the *assent* of the person entitled
to the distribution out of that trust fund—provided of
course the transaction be a *bona fide* one.   Such assent
should be satisfactorily established, and in a case where
there is a conflict of testimony on the subject, the Court
would hesitate to permit a trustee to withhold the fund
on an alleged verbal assent, but here the evidence is all
one way and not attempted to be refuted.   The appel-
lant has not seen proper to even show upon what con-
sideration the assignment was made or when the consid-
eration was given.   It is true that as between him and
Mrs. Rasin the assignment, being under seal, imports
a consideration, but when he came into the case in an-
swer to the petition which showed that this fund was in
controversy it was his duty to lay before the Court all
facts that would enable it to properly determine the
question.   From what we have said above it will be seen
that we are of the opinion that he not only had suf-
ficient notice to require him to defend, if he desired to
do so, but, as attorney in the case, he agreed to have it
submitted to the Court.   He certainly did not expect
the Court to decide all the questions, excepting the one
he was interested in—especially as it had expressly re-
served that for final hearing.

The order of the Court of September 4th (1893) direct-
ing the auditor to audit all sums of money which may
be due or may become due Mrs. Rasin in lieu of her
dower to I. Freeman Rasin can have no effect.   It might
be questioned whether it could apply to the fund dis-
tributed in the audit, as the auditor had already made
the audit and had doubtless filed it before he knew of
the order, as otherwise he would either have obeyed it or
referred to in his report, but however that may be, an
*ex parte* order of that character could not bind any one
having a superior claim to the fund.

It being shown that Mrs. Rasin had, prior to her
assignment to the appellant, gotten the benefit of the
fund audited to her, with the express understanding that
it should be so applied, it would be very inequitable to
permit her, or any one claiming under an assignment

made by her after she had thus received the benefit of it, to require the remaining trustee, who must now make good the defalcations and unauthorized payments of Weedon, to pay it over again. Courts of equity would fail in the objects for which they were organized if they were required by technical rules of law to thus adopt such inequitable proceedings, but fortunately they are not.

As the decree *pro forma* was passed without appellant's knowledge and hence he did not have the benefit of a hearing in the Court below, we will direct that each party pay his own costs in this case, the cost of the record being provided for in the case of *Barroll* v. *Forman et al.*, but must affirm the part of the decree herein involved.

> *Seventh paragraph of the decree affirmed, each party to pay his own costs, as stated in the opinion.*

(Decided June 29th, 1898.)