## In re BRESNAN et al.

### No. 5155.

District Court, D. Maryland.

Oct. 28, 1930.

194

France, McLanahan & Rouzer, of Baltimore, Md., for petitioner.

George W. Lindsay and Wm. Ewin Bonn, both of Baltimore, Md., for respondent.

WILLIAM C. COLEMAN, District Judge.

This case arises upon a petition of the trustee in bankruptcy filed pursuant to the provisions of the Bankruptcy Act (11 USCA § 11, subsec. 10) and General Order 27 (11 USCA § 53), for a review of the findings of the referee allowing the claim of a creditor to certain funds, in opposition to the claim of the Trustee in bankruptcy.

In a proceeding of this kind the scope of the court's power to review is very broad. The court is not bound by the referee's findings of fact any more than it is bound by his conclusions of law. It is permissible for the court to remand the case for the taking of further testimony, or even to take additional testimony itself, if such appears to the court necessary or proper. However, if the referee's findings on questions of fact are based upon a review of conflicting evidence or involve weighing the credibility of witnesses, they are entitled to very great weight, and will not be rejected or disregarded by the court unless manifestly erroneous. Free v. Shapiro (C. C. A.) 5 F.(2d) 578.

The pertinent facts found by the referee and concerning which there is no dispute are the following: For some years prior to the filing of the petition in bankruptcy, which took place on November 23, 1927, the bankrupts, John J. Bresnan and Merritt G. Rasin, copartners trading as J. J. Bresnan & Co., had been engaged in the general contracting business, largely in road construction. The Pen Mar Company, which was engaged in the business of selling materials and supplies to contractors and builders, had dealt with the bankrupts for some five years prior to the bankruptcy proceedings, and for a number of months prior to the same had taken, from time to time, assignments from the bankrupts of money payable to them under various construction contracts, as security for amounts due the Pen Mar Company by the bankrupts for merchandise purchased and used in the execution of such contracts. As a result of this practice, some time prior to July 11, 1927, the Pen Mar Company held

an assignment of money due to the bankrupts by the city of Baltimore on a sewer contract amounting to approximately $1,900. When this payment, however, became due from the city, Rasin, one of the bankrupts, collected it from the city engineer without the knowledge or consent of the Pen Mar Company, and appropriated it to the use of the partnership, upon learning which the Pen Mar Company demanded that the money be turned over to it, which was not done. Thereupon the Pen Mar Company refused to extend any further credit, or to deliver any more materials to the bankrupts, unless and until they made an assignment to it of all money due and to become due under their contracts with the city. Agreeing to this demand, the bankrupts addressed the two following communications to the Pen Mar Company:

"Baltimore, July 11th, 1927

"The Pen Mar Company, Inc., 323 Munsey Building, Baltimore, Md.

"Gentlemen: We hereby assign to Pen Mar Company, Inc. All money due us on Contracts          , on which we are working for the Paving Commission of Baltimore City.

"Very truly yours,
"John J. Bresnan."

"July 25, 1927.

"The Pen Mar Company, Inc., 321 Munsey Building, Baltimore, Maryland.

"Gentlemen: I hereby guarantee not to collect any of the checks for J. J. Bresnan and Company, on Contract No. 397.

"Yours very truly,
"John J. Bresnan
"Merritt G. Rasin."

On the date of the second communication, namely, July 25, 1927, the bankrupts also sent the following communication to the mayor and city council and to the paving commission of Baltimore city:

"The Mayor and City Council, Paving Commission, Baltimore, Maryland.

"Gentlemen: We hereby assign to the Pen Mar Company, Inc., the total amount of money on Contract No. 397.

"Yours very truly,
"John J. Bresnan
"Merritt G. Rasin."

It was mutually understood that the information as to the specific contracts, lacking in the bankrupts' communication of July 11th to the Pen Mar Company, was to be supplied later, or a new assignment was to be executed.

Between July 11th and 25th the Pen Mar Company furnished the bankrupts merchandise invoiced at approximately $3,600. On the latter date, the bankrupts owed the company approximately $23,000, which was greatly in excess of the sums then due by the city to the bankrupts under contract No. 397. The two communications of July 25th were delivered by the credit manager of the Pen Mar Company to the office of the highways engineer of the city of Baltimore. The other paper, dated July 11th, was not filed with the city. Between July 25th and November 23d the Pen Mar Company delivered additional material to the bankrupts on credit amounting to approximately $6,300. There was a further verbal understanding between the bankrupts and the Pen Mar Company on July 25th, to the effect that the former would require some part of the payments due from the city in order to meet their pay roll from time to time. On September 7th and October 18th, two checks for an approximate aggregate of $14,000 were drawn by the city on account of contract No. 397 to the order of "J. J. Bresnan and Company, c/o Pen Mar Company," were delivered to the Pen Mar Company, and were in due course indorsed and deposited in bank to the account of the Pen Mar Company. In addition to the foregoing payments, the bankrupts obtained during the month of September $3,000 for pay roll purposes by checks of the Pen Mar Company. Contract No. 397 between the bankrupts and the city of Baltimore was in the standard form and contained, among other provisions, the following: "Sub-letting or assigning of contract. The Contractor shall not sub-let, sell, transfer, assign or otherwise dispose of the contract or any portion thereof, or of the work provided for therein, or of his right, title or interest therein, to any person, firm or corporation without the written consent of the Engineer." The written consent of the city's engineer so required was never obtained. When contract No. 397 was finally completed, which the city accomplished through another contractor upon the bankruptcy of the Bresnan partnership, there remained due from the city under the contract approximately $10,500. Upon petition of the trustee, this court authorized and directed him to collect from the city this balance without prejudice, however, to any rights which he himself, or the Pen Mar Company, might have respecting the ownership of this balance, and, pursuant to such order, the city of Baltimore paid the trustee $7,500. It is this sum, as well as the balance of approximately

$3,000 retained by the city under the contract, which the Pen Mar Company claimed and was allowed by the referee pursuant to his findings, in opposition to which the trustee has filed his petition for a review, and has been granted a hearing thereon.

The referee summarized his findings as follows: "(1) The Referee finds that the assignment of July 25th, 1927, from the bankrupts to the Pen Mar Company, was a valid equitable assignment and that its claim to the fund in question is superior to that of the Trustee. (2) The referee further finds that at the time of giving said assignment the bankrupts were insolvent. (3) That at the time of receiving said assignment the Pen Mar Company did not have reasonable cause to believe that same would create a preference."

The trustee claims that the first and third findings of the referee are erroneous for the reason: "(1) That the assignment of July 25, 1927, from the Bankrupts to the Pen Mar Company was not a valid equitable assignment and that the Pen Mar Company's claim to the fund in question is not superior to that of the trustee. (2) That at the time of receiving said assignment, the Pen Mar Company did have reasonable cause to believe that the same would create a preference."

The court concludes that the exceptions of the trustee must be overruled and the findings of the referee sustained for the following reasons. Under section 60a of the Bankruptcy Act (11 USCA § 96(a), a preference consists of a person, (1) while insolvent and (2) within four months of bankruptcy, (3) procuring or suffering a judgment to be entered against himself, or making a transfer of his property, (4) the effect of which would be to enable one creditor to obtain a greater percentage of his debt than any other creditor of the same class. Such preference is voidable at the instance of the trustee if (1) the person receiving it, or to be benefited thereby, has (2) reasonable cause to believe that the enforcement of a judgment or transfer would result in a preference. Section 60b, 11 USCA § 96(b). The burden is upon the trustee to establish these necessary facts. Manly v. Southern Supply Co. (C. C. A.) 14 F.(2d) 273; In re Klein Moffett Co. (D. C.) 28 F.(2d) 523.

All of the funds claimed by the trustee must be treated as property not in the custody of the bankruptcy court, because part of the money is still retained by the city, and that which the trustee holds has come into his hands by order of this court, subject to the express provision that, in so far as rights thereto are concerned, its status is not to be considered as having been changed by surrender to the trustee for the purpose of having the claims thereto adjudicated. Therefore, the position of the trustee with respect to the entire fund is that of a judgment creditor holding an execution duly returned unsatisfied, beginning as of the time when the petition in bankruptcy was filed, which in the present case was November 23, 1927. Bankruptcy Act, § 47a, 11 USCA § 75(a); Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275. The first question, therefore, to be determined is whether the first finding of the referee, to which the trustee has excepted, is correct to the effect that the assignment of July 25, 1927, from the bankrupts to the Pen Mar Company is a valid equitable assignment. If it is, it is superior to the claim of the trustee, because prior in point of creation, provided, of course, the assignment is not voidable for other reasons hereinafter discussed.

Whether the assignment is valid is a matter of local law, and therefore depends upon the law of Maryland. Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228. In Kellas v. Slack, 129 Md. 535, 99 A. 677, Ann. Cas. 1918D, 640, the Court of Appeals of Maryland held that any order, writing, or act which plainly makes an appropriation of a fund or debt may amount to an equitable assignment, and that the true test is whether the debtor would be justified in paying the debt to the person claiming to be assignee. The principal arguments advanced by the trustee in support of his contention that the Pen Mar Company did not obtain a valid prior equitable assignment are: (1) That an assignment of money to become due in the future is not recognized in Maryland, and (2) that any such assignment was invalid without the prior written consent of the city of Baltimore, which was not obtained in the present instance. But before considering these contentions, it is necessary to determine the exact effect of the letters which form the basis of the alleged assignment. It is to be noted that the first of these letters, namely, that dated July 11, 1927, refers to money due to the bankrupts on contracts on which they were then working. In other words, it does not specifically refer to money "to be due." Also, no specific reference is made to contract No. 397 or to any other contracts between the bankrupts and the city, although, from the subsequent correspondence and the

understanding of the parties at the time, contract No. 397 was the one in contemplation when the letter of July 11th was written. The letter of July 25th does expressly assign "the total amount of money on" that contract. Therefore, the later letter, properly construed, would seem to be merely a confirmation of the earlier one. But assuming, without deciding, that the earlier letter does not cover money to be earned in the future, the two letters taken together or the later letter standing by itself is entirely adequate for this purpose.

■ We therefore turn next to the question as to whether money yet to be earned under an existing contract is assignable under the Maryland law. This question has been definitely answered in the affirmative by the Court of Appeals of Maryland in Seymour v. Finance & Guaranty Co., 155 Md. 514, at page 531, 142 A. 710, 716, where the court said: "The weight of authority seems to be to the effect that a debt which has actual or potential existence is a proper subject of an assignment. The debt here, at the time of the assignment, had no actual existence, because it had not then been earned, but it did have a potential existence." The court then cites numerous authorities with approval. To the same effect is Pen Mar Co. v. Ashman, 152 Md. 273, 136 A. 640. In the first of these cases, there had been a general assignment by the contractor for the benefit of his creditors subsequent to the assignment to the individual creditor, and, in the second case, there had been a subsequent attachment of the funds assigned, laid in the hands of the trustee under a mortgage. While we are not concerned in the present case with the question of whether knowledge or notice on the part of the original debtor is essential to render the assignment enforceable, because the letter of July 25th was actually deposited with the city, it may be pointed out parenthetically that in the Seymour Case the court held it was not necessary, in order to make the assignment of the claim for money due in the future valid, to notify the original debtor of the assignment. In the other case, the court said, at page 279 of 152 Md., 136 A. 640, 642: "Even if the garnishee had been a debtor instead of a trustee bound by the duties of an active trust, and had not, in fact, accepted the partial assignments, prior notice to the garnishee would have made the assignments operate as equitable assignments between the owner and the assignees, and, so, good as against subsequent attaching creditors of the assignor. The reason for this is

that the attaching creditor can subject to his attachment only the interest of the attachment debtor at the time of the attachment and arising before the trial. It follows that a bona fide partial assignment or other transfer by the debtor before the laying of the attachment has priority, although the assignment or other transfer be equitable instead of good at law. Supra, and 2 Perry on Trusts, § 926; International Bedding Co. v. Terminal Warehouse Co., 146 Md. 479, 491, 126 A. 902, 40 A. L. R. 960; Balto. & O. R. Co. v. Wheeler, 18 Md. 378, 379; Getz v. Johnston, 143 Md. 543, 549, 123 A. 74; Brady v. State, 26 Md. 290, 311; Troxall v. Applegarth, 24 Md. 163, 182, 183; Lambert v. Morgan, 110 Md. 1, 24, 26, 72 A. 407, 132 Am. St. Rep. 412, 17 Ann. Cas. 439; Bruns v. Spalding, 90 Md. 349, 359, 360, 45 A. 194; Owens v. Barroll, 88 Md. 204, 208, 210, 40 A. 880; Brown v. Macgill, 87 Md. 161, 172, 173, 39 A. 613, 39 L. R. A. 806, 67 Am. St. Rep. 334." Nor, as the Court of Appeals points out in the Ashman Case just analyzed, does it matter that the original debtor continues to pay to the assignor by check, which the latter indorses to the assignee.

■ It becomes unnecessary to consider the various cases cited by the trustee in support of his contention that the assignment is invalid, because these cases were concerned with agreements to assign, whereas in the present case nothing more remained to be done by the assignor. Also there is no force in the argument that the assignment is invalid on the ground that the creditor agreed to remit to the bankrupts, from time to time, part of the funds assigned, because such agreement was entirely silent as to the time and amount of such remittances, and clearly did not endeavor to allocate any part of the funds to this purpose.

■ Coming now to the second argument of the trustee that the assignment was invalid because not made with the prior written consent of the city of Baltimore, this argument is also untenable, because such a prohibition against assignment, or a condition restricting performance of the debtor's obligation to the original promisee, is intended for the benefit of the debtor and cannot affect the equitable rights of the assignor and assignee as between themselves. Portuguese-American Bank of San Francisco v. Welles, 242 U. S. 7, 37 S. Ct. 3, 61 L. Ed. 116, Ann. Cas. 1918D, 643. In this case the Supreme Court, in passing upon a situation involving the same question, said, at page 10 of 242 U. S., 37 S. Ct. 3:

"The contract provided that the contractor should keep the work under his personal control, and should not assign or sublet the whole or any part thereof without the consent of the Board of Public Works. It further declared that no subcontract should relieve the contractor of any of his obligations, and that he should not 'either legally or equitably, assign any of the moneys payable under the contract or his claim thereto unless with the like consent.' The city has made no objection to the assignment to the bank, and the money now awaits the decision of this court as between the claimant of the lien and the prior assignee.

"There is a logical difficulty in putting another man into the relation of the covenantee to the covenantor, because the facts that give rise to the obligation are true only of the covenantee, a difficulty that has been met by the fiction of identity of person and in other ways not material here. Of course, a covenantor is not to be held beyond his undertaking, and he may make that as narrow as he likes. Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379, 8 S. Ct. 1308, 32 L. Ed. 246. But when he has incurred a debt, which is property in the hands of the creditor, it is a different thing to say that, as between the creditor and a third person, the debtor can restrain his alienation of that, although he could not forbid the sale or pledge of other chattels. * * *

"The debtor does not complain, but stands indifferent, willing that the common law should take its course."

▆▆▆▆▆ Having thus determined that the assignment is valid and superior to the claim of the trustee, we must consider the remaining question, whether, at the time it was made, the Pen Mar Company had reasonable cause to believe that by taking this assignment they would receive a preference, because, if this were the case, since the insolvency of the bankrupts at the time of the assignment is beyond question on the evidence and is in fact admitted, and since assuming that it was not until the letter of July 25th that the assignment was in fact created, the transfer occurred within four months of bankruptcy and would therefore have been voidable.

A review of the evidence satisfies us that the referee was equally correct in his finding upon this latter point, because there is nothing which would justify a contrary conclusion. It is, of course, true in dealing with questions of this kind that notice of facts which would incite a person of reasonable prudence to inquire is notice of all facts which reasonably diligent inquiry would develop. Essex National Bank v. Hurley (C. C. A.) 16 F.(2d) 427; In re Klein Moffett Co. (D. C.) 28 F.(2d) 523. But it is to be remembered that section 60 of the Bankruptcy Act (11 USCA § 96) does not use the term "insolvent" in its common-law sense, as indicating the inability of a person presently to pay his debts as they mature, but rather it is used with the same meaning as specifically defined in section 1a(15), namely: "A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." 11 USCA § 1(15). See In re Walker Starter Co. (C. C. A.) 235 F. 285; In re Pingel (D. C.) 283 F. 664. Furthermore, the test is not as it was originally under the Bankruptcy Act, one of belief as to the bankrupt's insolvency, but of belief that the transfer would effect a preference. In short, even though a creditor may be aware of a bankrupt's insolvency, yet if such creditor honestly believes that all of the bankrupt's assets, actual and anticipated, will realize enough to pay his debts in full, he cannot be said to have reasonable cause to believe that a preference will result. O'Grady v. Chautauqua Builders' Supply (D. C.) 33 F.(2d) 957; Kennard v. Behrer (D. C.) 270 F. 661.

As pointed out by the referee, the only testimony bearing directly upon the actual or constructive notice that the Pen Mar Company may have had of the bankrupts' insolvency on July 25th is that of the Pen Mar Company's bookkeeper. He stated positively that he did not then know the financial condition of the bankrupts; that during the entire period, covering several years, that his company had dealt with the bankrupts, the latter's account was always partially overdue; that it was customary, from time to time, for the bankrupts voluntarily to make partial assignments under their construction contracts; and that the reason the assignment here involved was demanded was because one of the bankrupts had breached one of the prior assignments, not because the bankrupts were considered a bad credit risk. In short, we adopt the analysis and reasoning of the referee on this point and conclude that the second, as well as the first, ground of exceptions

to his report is unsupported by the evidence. As was said in Kennard v. Behrer, supra, at page 664 of 270 F.: "A contractor's business is in any case one of feast or famine, in which that might be no more than an exhilarating episode which to a bank, for example, would be a despairing gasp."

Accordingly, all of the findings of the referee are affirmed.