## BANK OF COMMERCE v. BROWN.

(Circuit Court of Appeals, Fourth Circuit. January 3, 1918.)

No. 1562.

1. BANKRUPTCY ⬤⟿303(3)—VOIDABLE PREFERENCE—EVIDENCE.

Evidence considered, and *held* insufficient to support a finding that a bank, at the time it discounted the note of a bankrupt secured by collateral, from the proceeds of which note the bankrupt paid a prior unsecured note for a smaller amount, receiving the remainder in cash, had reasonable cause to believe that the bankrupt was insolvent, so as to render the transaction voidable as a preference.

2. BANKRUPTCY ⬤⟿166(4)—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BELIEVE DEBTOR INSOLVENT.

The burden is upon a trustee to prove that a creditor had reasonable cause to believe, at the time of taking security from the bankrupt, that he was insolvent, and that the security would effect a preference; and it is not sufficient, under Bankruptcy Act July 1, 1898, c. 541, § 60, cls. "b," "c," 30 Stat. 562 (Comp. St. 1916, § 9644), that the creditor may have had a suspicion as to the debtor's solvency, but he must have had knowledge of facts calculated to produce a belief of his insolvency in the mind of an ordinarily intelligent man.

Appeal from the District Court of the United States for the Western District of South Carolina, at Greenville, in Bankruptcy; Joseph T. Johnson, Judge.

In the matter of A. J. Dillard, bankrupt. From an order sustaining the objection of J. Hertz Brown, trustee, to the claim of the Bank of Commerce to certain security, the latter appeals. Reversed.

John Gary Evans, of Spartanburg, S. C. (I. A. Phifer, of Spartanburg, S. C., on the brief), for appellant.

J. C. Otts, of Spartanburg, S. C., for appellee.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

KNAPP, Circuit Judge. [1] The controlling question in this case lies within narrow limits. On December 2, 1915, the Bank of Commerce, appellant herein, held notes to the amount of about $1,500, signed or indorsed by A. J. Dillard, who was adjudicated bankrupt within four months thereafter. On the date named, the bank discounted Dillard's note for $2,500, placing to his credit the proceeds, less what was due on the old notes, which were surrendered. To secure the payment of this note, Dillard gave the bank a note of the same amount, made by his son, S. B. Dillard, and one Bomar, which note was secured by mortgage on certain real estate and is the note in controversy. The trustee in bankruptcy having disputed the bank's claim to this security, on the ground that it was a voidable preference, the issue was tried in the court below, and a decree entered to the effect that the bank could hold the collateral as security for the additional money loaned when the $2,500 note was discounted, but not for the pre-existing debt, and that the balance of the collateral, after payment

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the amount advanced when it was pledged, must be turned over to the trustee. The bank appeals.

The sole basis of this decision, as the decree discloses, was the testimony of a Mr. Cantrell, who was a member of the loan committee of the bank at the time of the transaction. His entire statement, so far as material, appears in the record as follows:

"Q. Your idea in making this additional loan was to secure what he already owed you? A. That note was due, and he said it didn't suit him to take it up, and he gave us a $2,500 note he held against Mr. Bomar, and took up the $1,500 note, and I think we gave him $1,000 in money. Q. You considered the note perfectly good? A. Sure did. Q. How did you consider the notes you already had? A. Well, we didn't see any chance of collecting them. Q. You took this additional note for what you thought you were in danger of losing? A. That's my idea. Q. From what you have heard, you thought you were in pretty grave danger of losing? A. Well, we were uneasy."

It will be observed that no fact or circumstance is mentioned by Cantrell, and no reason given by him for any opinion or belief he may have had respecting the financial condition of Dillard; nor was this belief or opinion, if his state of mind may be so described, communicated to any officer or director of the bank. In point of fact, there was no meeting of the loan committee to pass upon the discount of Dillard's note; but each member was separately consulted and gave his assent. Moreover, the president of the bank, its cashier, and another member of the loan committee, all testified in substance that they had no reason to suppose that Dillard was insolvent; and the learned District Judge says he was satisfied that their testimony was true. There was also testimony to the same effect by the president of another bank.

[2] Even if it be assumed, as stated in the decree, that "Cantrell's knowledge and purpose is the knowledge and purpose of the bank," and giving due weight to his testimony as above quoted, we think it quite insufficient to sustain the conclusion that the bank had reasonable cause to believe that Dillard was insolvent and that the taking of the security in question would give it a preference over other creditors. And so the courts have held in analogous cases. In Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, where, as seems to us, the proof respecting "reasonable cause to believe" was decidedly less favorable to the security holder than in the case at bar, the Supreme Court, reversing the court below, said:

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. * * * A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it; and yet such a belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by law. * * * Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

It turned out that Dillard was in fact badly insolvent, and he may have been aware when the transaction took place that his financial condition was hopeless; but the right of the bank to retain the security it got is to be tested, not by the knowledge or intent of Dillard, but by the belief then held by the bank's officers as to his ability to meet his obligations. The burden is upon the trustee to prove that the creditor had reasonable cause to believe at the time of taking the security that the debtor was insolvent and that the transfer would effect a preference. Barbour v. Priest, 103 U. S. 293, 296, 26 L. Ed. 478; Stucky v. Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640. See, also, the later cases of In re Eggert, 102 Fed. 735, 43 C. C. A. 1, and Sharpe v. Allenler, 170 Fed. 589, 96 C. C. A. 104, in which the subject is further discussed.

In the light of these authorities, which appear directly in point, we are of opinion that appellant is entitled to hold the collateral note, or the proceeds thereof, as security for its entire claim against the bankrupt, and that the court below was in error in deciding otherwise. The decree must therefore be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

Reversed.