## MILLER v. MARTIN.

(District Court, M. D. Pennsylvania. January 29, 1927.)

No. 43.

1. Bankruptcy ⊕⇒303(1)—Burden is on trustee, seeking to recover payments made within four months before adjudication, to establish essential elements of voidable preference by fair preponderance of evidence.

Payments by bankrupt within four months before adjudication are presumed legal, and burden is on bankruptcy trustee, seeking to recover them, to overcome presumption by fair preponderance of evidence establishing essential elements of voidable preference, by showing bankrupt's insolvency when security was given, or transfer made or recorded, existence of other creditors of same class at that time, that enforcement of security or transfer gives them a lesser percentage of their debts than creditor who received transfer or security, that bankrupt's estate was demolished, and existence of "reasonable cause to believe."

2. Bankruptcy ⊕⇒303(1)—Where substantially equal inferences may reasonably be drawn, inference against voidable preference prevails.

Where inferences from proof respecting whether bankrupt's transfer constitutes voidable preference are to be drawn, rule is that, if two inferences of substantially equal weight may be reasonably drawn from proved facts, that inference shall prevail which sustains the transfer or security.

3. Bankruptcy ⊕⇒166(4⅗)—"Reasonable cause to believe" transaction is voidable preference requires knowledge of facts inducing reasonable belief and not mere suspicion (Bankruptcy Act [Comp. St. §§ 9585–9656]).

"Reasonable cause to believe" that transfer constitutes voidable preference, within Bankruptcy Act (Comp. St. §§ 9585–9656), means such knowledge of facts as induces a reasonable belief, or is cause for well-grounded belief, and not mere suspicion of insolvency.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Cause.]

4. Bankruptcy ⊕⇒303(4)—Evidence held insufficient to show that transferees of bankrupt's realty within four months of adjudication had reasonable cause to believe that bankrupt was insolvent.

In suit by trustee to set aside bankrupt's conveyance of realty within four mouths prior to adjudication as voidable preference, evidence held insufficient to show that transferees had reasonable cause to believe that bankrupt was then insolvent.

In Equity. Suit by Pius A. Miller, trustee in bankruptcy of J. L. Butt, bankrupt, against Ida S. Martin. Bill dismissed.

Wm. Arch McClean, of Gettysburg, Pa., for plaintiff.

Vincent K. Keesey, of York, Pa., for defendant.

JOHNSON, District Judge. The plaintiff in this case is seeking to set aside the conveyance of real estate made to the defendant, through her attorney, by J. L. Butt. On February 4, 1924, J. L. Butt executed and delivered a deed to J. Donald Swope, attorney for defendant, for two parcels of real estate situate in Gettysburg, Adams county, Pa. On February 21, 1924, J. Donald Swope, attorney for defendant, executed and delivered a deed for the same real estate to Ida S. Martin, defendant.

It is contended by the plaintiff, first, that on February 4, 1924, the date of the execution of the deed in question, J. L. Butt was insolvent; and, secondly, that the conveyance of the said two tracts of real estate by J. L. Butt to J. Donald Swope, attorney for defendant, depleted the estate to which his creditors were entitled, and that such transfer enables the defendant to obtain a greater percentage of her debts than the other creditors in the same class; and, thirdly, that J. Donald Swope, attorney for defendant, and the defendant Ida S. Martin, had reasonable cause to believe that J. L. Butt was insolvent, and that the conveyance would effect a preference in favor of Ida S. Martin, defendant; fourthly, that the conveyance was made within four months prior to the bankruptcy of J. L. Butt.

From the plaintiff's bill of complaint, the answer thereto, and the testimony taken thereon, the court arrives at the following findings of fact:

(1) J. L. Butt, a resident of Gettysburg, Adams county, in the Middle district of Pennsylvania, filed his petition to be adjudged a voluntary bankrupt in the District Court of the United States for the Middle District of Pennsylvania on March 25, 1924.

(2) On March 25, 1924, the said J. L. Butt was adjudicated a voluntary bankrupt, and the case was referred to J. Donald Swope, referee in bankruptcy, with his office in Gettysburg aforesaid.

(3) At the meeting of the creditors at the office of the referee on April 14, 1924, Pius A. Miller, the plaintiff, was elected trustee of the estate of said J. L. Butt, bankrupt.

(4) The plaintiff accepted the trusteeship, was duly qualified, and proceeded to perform the duties of his office.

(5) On February 4, 1924, the said J. L. Butt was indebted to Ida S. Martin, the defendant, in the sum of $11,800 or $12,000.

(6) On February 4, 1924, J. L. Butt and his wife executed and delivered to J. Donald Swope, who was acting as attorney for Ida

S. Martin, defendant, their deed, conveying two certain parcels of real estate, situate in Gettysburg aforesaid.

(7) The said deed was entered for record in the office of the recorder of deeds in and for said Adams county in Deed Book 95, p. 257, and conveyed the following described real estate:

Lot No. 1. Beginning at a corner of lot formerly of Sarah A. Butt, No. 2, herein; thence along said lot formerly of Sarah A. Butt, east, 142 feet, to an alley; thence along said alley, south, 29 feet 9 inches; thence by lot of Henry Dustman, west, 142 feet, to Carlisle street; thence along Carlisle street, north, 29 feet 9 inches, to the place of beginning, containing 26.3 perches, neat measure.

Lot No. 2. Beginning on the east side of Carlisle street, at the northwest corner of lot of J. L. Butt, lot No. 1 herein; thence fronting on Carlisle street, north, 72 feet, to the lot formerly of Rev. Samuel Smith, now E. M. Bender; thence by said last-mentioned lot, east, 142 feet, to a public alley; thence by said public alley, south, 72 feet, to lot of J. L. Butt, No. 1 herein; thence by said lot No. 1, 142 feet to the place of beginning.

(8) The consideration money in the said deed, and known as a consideration for the conveyance of the said real estate, was $10,-000, and receipt for the same is acknowledged by the grantors.

(9) On February 21, 1924, the said J. Donald Swope and his wife executed and delivered to Ida S. Martin their deed, conveying the premises described in paragraph 7 foregoing; said deed being entered for record in the office of the recorder of deeds in and for Adams county on June 12, 1924.

(10) J. Donald Swope, on February 4, 1924, when he received the deed in question from said J. L. Butt, and on February 21, 1924, when he executed and delivered the said deed to Ida S. Martin, defendant, was attorney for Ida S. Martin, and acting for her in the entire transaction, receiving the deed and said described property for her, and executing and delivering the said deed for the said property to her.

(11) On February 4, 1924, the said J. Donald Swope was employed as attorney by Ida S. Martin, defendant, to collect from said J. L. Butt a sum of money, to wit, $11,-800 or $12,000, which the said J. L. Butt owed the said Ida S. Martin, and the execution and delivery of the deed in question was the result of said attorney's efforts to make the collection.

(12) On February 4, 1924, the said J. L. Butt, grantor in the said deed of that date, was insolvent.

(13) On February 4, 1924, J. Donald Swope, grantee in said deed of February 4, 1924, did not have reasonable cause to believe that his grantor, J. L. Butt, was insolvent.

(14) On February 21, 1924, the said J. L. Butt was insolvent.

(15) On February 21, 1924, Ida S. Martin, defendant, grantee in said deed of that date, did not have reasonable cause to believe that the said J. L. Butt, her debtor, was insolvent.

(16) The said conveyances in question of February 4, 1924, and of February 21, 1924, were not made for the purpose of giving a preference to Ida S. Martin, defendant, and to enable her to obtain out of the estate of the said J. L. Butt a larger sum of money than other creditors of the grantor of the same class would obtain.

From the foregoing findings of fact, the court arrives at the following conclusions of law:

(1) On February 4, 1924, the said J. L. Butt was insolvent.

(2) Neither Ida S. Martin, defendant, nor her attorney, J. Donald Swope, had reasonable grounds to believe that on February 4, 1924, the said J. L. Butt was insolvent.

(3) On February 4, 1924, neither Ida S. Martin nor her attorney, J. Donald Swope, had any knowledge or any reasonable grounds for believing that the said conveyances from J. L. Butt to J. Donald Swope would effect a preference in favor of Ida S. Martin, defendant, over the other creditors of said J. L. Butt of the same class.

(4) The deeds in question are valid. The bill of complaint, praying the court to declare them void, and to direct the said Ida S. Martin to convey said real estate to said Pius A. Miller, trustee, must be dismissed. [1, 2] Since the conveyances in question were made within four months of the adjudication of the bankruptcy of J. L. Butt, and since J. L. Butt was insolvent at the time of the conveyances in question, the real question in this case is whether J. Donald Swope, attorney for Ida S. Martin, or Ida S. Martin, had reasonable cause to believe that such transfer of property by J. L. Butt would effect a preference in favor of Ida S. Martin. The law is properly laid down in Collier on Bankruptcy (13th Ed.) p. 1328, as follows:

"The law presumes that such payments are legal, and the burden of proof is on the

trustee, seeking to recover them, to overcome this presumption, and establish the essential elements of a voidable preference. He must prove the insolvency of the debtor at the time the security was given, or the transfer made or recorded, and establish the existence of other creditors of the same class at that time, and that the enforcement of the security or transfer will operate to give them a lesser percentage of their debts than the creditor who receives the transfer or security; and he must also prove the existence of the 'reasonable cause to believe,' and that the payment diminished the estate of the bankrupt. All this must be done by a fair preponderance of all the evidence in the case, and, where inferences from proved facts are to be drawn, the rule obtains that, if two inferences of substantially equal weight may reasonably be drawn from the proved facts, then that inference shall prevail which sustains the transfer or security."

[3] "When the bankruptcy law * * * was enacted, the phrase 'reasonable cause to believe,' as applied to a preference, had been judicially defined to mean, not mere suspicion, but such knowledge of the facts as to induce a reasonable belief, or cause for well-grounded belief, and such definition followed the phrase into the statute." City National Bank v. Slocum (C. C. A.) 272 F. 11; citing Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971; Stucky v. Masonic Bank, 108 U. S. 74, 2 S. Ct. 219, 27 L. Ed. 640; In re Eggert (C. C. A.) 102 F. 735; Carey v. Donohue (C. C. A.) 209 F. 328; Baxter v. Ord (C. C. A.) 239 F. 503.

"In order to invalidate, as a fraudulent preference, within the meaning of the Bankruptcy Act [Comp St. §§ 9585-9656], a security taken for a debt, the creditor must have had such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency. It is not sufficient that he had some cause to suspect such insolvency." Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971.

In Grant v. National Bank, 97 U. S. on page 81, 24 L. Ed. 971, Mr. Justice Bradley, in delivering the opinion of the court, said:

"Some confusion exists in the cases as to the meaning of the phrase 'having reasonable cause to believe such a person is insolvent.' Dicta are not wanting which assume that it has the same meaning as if it had read, 'having reasonable cause to suspect such a person is insolvent.' But the two phrases are distinct in meaning and effect. It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it; and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances, is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside; and yet this could be done in a large proportion of cases, if mere grounds of suspicion of their solvency were sufficient for the purpose.

"The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the Bankruptcy Law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided. Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

[4] The testimony on both sides shows that J. L. Butt was generally considered a wealthy man, and that in the negotiations which led up to the conveyance of the property, and until the conveyance, no reference or statement was made in regard to the insolvency of Butt. In the conference between J. Don-

ald Swope and Charles S. Butt, son of J. L. Butt, Charles S. Butt produced a statement to Swope showing that the assets of J. L. Butt exceeded his liabilities by $50,000 or $60,000, and that Charles S. Butt said to J. Donald Swope that he could secure the money to pay Mrs. Martin, if he were allowed some time. The evidence fails to disclose any fact or facts existing at the time of the transfer of the property in question which should have led Swope or Mrs. Martin reasonably to believe that J. L. Butt was insolvent at the time. In fact, from the evidence, whatever was said or done, apart from the fact that J. L. Butt had misappropriated Mrs. Martin's money, would lead a reasonably prudent person to believe that J. L. Butt was solvent at the time. Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, has been followed down to the present time in many cases.

From the above findings of fact and conclusions of law, the bill of complaint should be dismissed; and it will be dismissed.