## In re KLEIN MOFFETT CO.

District Court, D. Maryland. October 10, 1928.

No. 4861.

See, also, 27 F.(2d) 444.

Marbury, Gosnell & Williams, of Baltimore, Md. (Jesse Slingluff, of Baltimore, Md.), for bank.

Jacob M. Moses, of Baltimore, Md., for trustee.

WILLIAM C. COLEMAN, District Judge. This case arises upon a petition by the trustee in bankruptcy, asking that certain transfers made by the bankrupt to a creditor within four months of the filing of the petition in bankruptcy be declared preferential and the money embraced in the transfers returned to the trustee as assets of the bankrupt estate. There is no dispute about the following facts:

On December 11, 1926, the Klein Moffett Company, which was engaged in the manufacture of clothing, owing the Citizens' National Bank of Baltimore $100,000, represented by 20 notes, for $5,000 each, two of which were due and payable on the 16th and 23d of the same month, approached the bank for a further loan of $7,500 against 188 shares of the stock of the bank, owned by the bankrupt. The request was made to the president of the bank in person by the president of the bankrupt and his counsel. At the same time a revised statement of the bankrupt's financial condition was presented, which showed that the net worth of the company had shrunk approximately 84 per cent.; that is, from an estimate of some

$200,000 to approximately $32,000, due to reduction in inventories and accounts receivable. The additional loan was represented as being necessary in order to pay certain accounts, which would enable the company to complete certain unfilled orders. It had been customary for a number of years past for the bankrupt to pay its notes to the bank a week or 10 days in advance of their due dates. On the day in question, namely, December 11th, there was on deposit with the bank, to the credit of the bankrupt, approximately $10,000, less certain outstanding checks. It was agreed that the bank would lend the additional $7,500, provided the bankrupt would simultaneously pay the two notes for $5,000 each, heretofore referred to, maturing in a few days, and provided, also, the bank be given as collateral for this loan the 188 shares of the bank's stock.

This arrangement was agreed to; the bankrupt drew upon its credit balance in the bank to the extent of $2,500, which it applied, together with the $7,500 advanced by the bank, to the payment of the two notes; the collateral was pledged and the loan thus consummated. Very shortly thereafter, a further audit showed that the company was, and had been on December 11th, in fact insolvent; on December 17th receivers were appointed for it in the state court; on December 22d an involuntary petition in bankruptcy was filed, and the next day adjudication followed. On December 31st the bank sold the collateral stock for $9,162 and applied the proceeds to the payment of the bankrupt's indebtedness. On February 4, 1927, the trustee in bankruptcy made demand upon the bank for these proceeds, as well as for the $2,500 withdrawn from the bankrupt's deposit account and utilized as above explained. A refusal to comply with this demand resulted in the petition of the trustee which is now before the court.

The basis of the trustee's contention is that the loan of December 11, 1926, was in reality a transaction to secure an antecedent debt, and, since it took place within the four months' period, and since at the time the company was insolvent, and the bank had reasonable cause to believe that it was insolvent, the hypothecation of the stock and the prepayment of the two promissory notes constituted a voidable preference. The bank, on the other hand, in its answer asserts that it had no reasonable cause to believe the company insolvent on December 11th; that, if the bank had believed that the company was in fact insolvent, it would have then exercised its banker's lien, as it

had a right to do, against the amount then on deposit to the credit of the bankrupt, and would have applied said amount on account of the indebtedness then due it. The result would have been that it, the bank, would have received a much larger sum than by the action which it did take with respect to the loan of $7,500 with the collateral, because it would have been entitled to appropriate the entire deposits of the bankrupt company in liquidation of its indebtedness, and by reason of the fact that the bank's claim against the bankrupt represented about 57½ per cent. of all claims filed, it would have been entitled to receive 57½ per cent. of the value of the stock, or approximately $5,000, by way of dividends from the bankrupt estate; that is, a total of approximately $16,000, as against approximately $11,000, which it did actually receive as a result of making the loan and liquidating the collateral as it did.

Under section 60a of the Bankruptcy Act (11 USCA § 96), a preference consists of a person, (1) while insolvent and (2) within four months of bankruptcy, (3) procuring or suffering a judgment to be entered against himself, or making a transfer of his property, (4) the effect of which would be to enable one creditor to obtain a greater percentage of his debt than any other creditor of the same class. Such preference is voidable, at the instance of the trustee, if (1) the person receiving it, or to be benefited thereby, has (2) reasonable cause to believe that the enforcement of a judgment or transfer would result in a preference.

██ There is no doubt, upon the facts in the present case, that the security was here given for an antecedent debt; that the transaction took place while the company was insolvent, within four months of its bankruptcy; and that it resulted in the bank being paid more than other similar creditors. A transfer is no less a preference because it may have been accomplished by indirection. On the other hand, the burden is upon the trustee to prove that all of the requisites of a voidable preference exist, and the court is not satisfied on the evidence that the bank did have reasonable cause to believe that the enforcement of the transfer would result in a preference within the meaning of the Bankruptcy Act.

In Grant v. First National Bank, 97 U. S. 80, 24 L. Ed. 971, the Supreme Court had occasion to construe the Bankruptcy Act of 1867, which, in lieu of the words in the present act, "shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a

preference," contained the phrase "having reasonable cause to believe such a person is insolvent." 14 Stat. 534, § 35. The court held that "reasonable cause" meant knowledge of such facts as to induce a reasonable belief as opposed to suspicion, saying (97 U. S. at pages 81 and 82):

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor; but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicion a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is in failing circumstances, and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further; he may feel anxious about his claim, and have a strong desire to secure it, and yet such belief as the act requires may be wanting. Obtaining additional security, or receiving payment of a debt, under such circumstances is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to be set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose.

"The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate; and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided. Hence the act, very wisely, as we think, instead of making a payment or a security void for a mere suspicion of the debtor's insolvency, requires, for that purpose, that his creditor should have some reasonable cause to believe him insolvent. He must have a knowledge of some fact or facts calculated to produce such a belief in the mind of an ordinarily intelligent man."

The above reasoning is of equal application to the change in the act's phraseology, and so it has been frequently held in this and other circuits. Bank of Commerce v. Brown (C. C. A.) 249 F. 37; Miller v. Martin (D. C.) 17 F.(2d) 291. In the first of the above-named cases, a decision of this circuit, rendered by Judge Knapp, the facts were quite similar. There a bank discounted a note of the bankrupt, secured by collateral, with the proceeds of which note the bankrupt paid a prior unsecured note for a smaller amount, receiving the remainder in cash. In holding that the evidence was insufficient to support a finding that the bank had reasonable cause to believe that the bankrupt was insolvent, the court said, after quoting parts of the opinion in Grant v. First National Bank, hereinabove quoted (249 F. at page 39):

"It turned out that Dillard was in fact badly insolvent, and he may have been aware when the transaction took place that his financial condition was hopeless; but the right of the bank to retain the security it got is to be tested, not by the knowledge or intent of Dillard, but by the belief then held by the bank's officers as to his ability to meet his obligations. The burden is upon the trustee to prove that the creditor had reasonable cause to believe at the time of taking the security that the debtor was insolvent and that the transfer would effect a preference. Barbour v. Priest, 103 U. S. 293, 296, 26 L. Ed. 478; Stucky v. Savings Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640. See, also, the later cases of In re Eggert, 102 F. 735, 43 C. C. A. 1, and Sharpe v. Allender, 170 F. 589, 96 C. C. A. 104, in which the subject is further discussed."

It is, of course, true that notice of facts which would incite a person of reasonable prudence to inquire is notice of all facts which reasonably diligent inquiry would develop. Essex National Bank v. Hurley (C. C. A.) 16 F.(2d) 427. But it appears that in the present case the bank had reasonable cause to suppose that the company was not insolvent. It is true that the revised statement showed a very large shrinkage in net worth, but from the statements made to the bank by those presumably best qualified to know, namely, the company's president and counsel, the bank was justified in believing that the company might be rehabilitated. At least, the bank had a right to take for their face value the state-

ments made to it that, if its temporary embarrassment might be relieved by affording it some ready cash, unfilled orders might be carried out and the business generally revived. Add to this the fact that the company had been a reputable business concern, of considerable size, for many years, and a satisfactory, regular client of the bank, and the further fact that the bank elected to forego the exercise of an alternative legal right, which, in contemplation of insolvency, would obviously have been more beneficial to the bank, it is difficult to conclude that the bank, through its officials, is to be charged with having more than ground to suspect insolvency.

As we have seen, there is a clear distinction in the law between reasonable belief of a debtor's insolvency and cause to suspect such insolvency. The former creates such a preference; the latter does not. Grant v. First National Bank, supra. It is to be borne in mind that section 60a of the Bankruptcy Act does not use the term "insolvent" in its common-law sense, as indicating the inability of a person presently to pay his debts as they mature, but with the meaning as specifically defined in section 1a (15), namely: "A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." 11 USCA § 1(15). See In re Walker Starter Co. (C. C. A.) 235 F. 284; In re Pingel (D. C.) 283 F. 664.

The petition of the trustee must therefore be dismissed.