George CLOWER, Trustee in Bankruptcy of the Estate of Sinton Plumbing & Supply Company, Inc., Appellant,

v.

FIRST STATE BANK OF SAN DIEGO, TEXAS, Appellee.

No. 21604.

United States Court of Appeals Fifth Circuit.

April 15, 1965.

Donald V. Organ, Jerome P. Halford, New Orleans, La., for appellant.

Ernest A. Carrere, Jr., New Orleans, La., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., of counsel, for appellee.

Before WISDOM and GEWIN, Circuit Judges, and BOOTLE, District Judge.

Charles R. Porter, Jr., R. Briscoe King, Corpus Christi, Tex., for appellant.

No appearance for appellee.

Before BROWN and BELL, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge:

The Trustee in Bankruptcy of the Estate of Sinton Plumbing & Supply Company, Inc. (hereinafter referred to as "Sinton") brought suit to set aside payments of $8,600 made by the bankrupt to the defendant bank within four months of the bankruptcy.

Section 60 of the Bankruptcy Act (Title 11 U.S.C.A. § 96, sub. a(1) states as follows:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section b of the above identified statute states as follows:

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

Section b of the statute then goes on to say that the Trustee may recover the property or its value from any person who has received such property.

All the elements of a preference voidable under Section 60, sub. b were stipulated to exist except the last, namely, the requirement that the creditor shall have "reasonable cause to believe" that the debtor was insolvent at the time of the transfer.

This appeal is uncontested, and in support of the District Court's judgment, this Court was neither favored by brief nor argument or appearance of counsel. The sole question is whether the district judge erred in finding that defendant bank did not have reasonable cause to believe Sinton insolvent when it received the payments of $8,600. We hold that this finding was erroneous and that the trustee is entitled to judgment.

A multitude of cases set forth the legal standards to be applied in resolving the question of reasonable cause with respect to voidable preferences. Numerous cases delineate the scope of appellate review where as here the

factual determination is primarily a matter of drawing inferences from undisputed facts. The facts of instant case are closely analogous to those in Mayo v. Pioneer Bank & Trust Company, 297 F. 2d 392, 5 C.C.A. 1961, where this Court, in carefully chosen language, defined the legal standards applicable there and here. Judge Wisdom put the rule in these words:

"Cases on the point have evolved a fine line to apply in determining whether a creditor has 'reasonable cause to believe' that a debtor is insolvent. For reasonable cause to exist, it is not necessary that a person benefited by a transfer know positively that the result of the transaction will be to effect a preference: it is sufficient for a finding of reasonable cause that the person or his agent has knowledge of such facts as would induce a person of reasonable prudence to make inquiry, when such inquiry would have developed the facts essential to a knowledge of the situation. On the other hand, if the known facts should raise only a suspicion that the debtor might be insolvent, the test is not met. Compare Marks v. Goodyear Rubber Sundries, 2 Cir., 1956, 238 F.2d 533, 62 A.L.R.2d 770 with Lang v. First National Bank in Houston, 5 Cir., 1954, 215 F.2d 118. See 3 Collier on Bankruptcy § 60.53.

\* \* \* \* \* \*

"Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C. A. the trial judge's findings of fact are conclusive unless clearly erroneous, but when the factual determination is primarily a matter of drawing inferences from undisputed facts or determining their legal implications, appellate review is far broader than where disputed evidence and questions of credibility are involved. Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186; Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217. Our scope of review in this case is broad, since the decision turns not on what the officers of the bank in fact believed, but on what they had 'reasonable cause' to believe; and, most of the basic facts are undisputed."

More obvious indications of solvency than those present in the instant case would be difficult to conceive. Sinton was insolvent from its very inception. When the alleged preference payments were made, it was hopelessly insolvent and going downhill fiscally at the rate of approximately $12,000 per month. Defendant bank made a $10,000 loan to the bankrupt on April 26, 1961. This was the first dealing of any nature with the bankrupt. The note was due on May 26, 1961. It was not paid and remained delinquent until August 16, 1961. Mr. Priour, President of Sinton, told the President of the bank sometime between July 20th and August 16th that Sinton could not "as much as pay the interest on this note." But, the note was renewed on August 16th and was scheduled to be paid on September 16th. Mr. Priour advised Mr. Donald that its company could not pay the note and that it was in "pretty bad shape." The note became delinquent, but a payment on it was made in November. No further payments were made and the note was turned over to the bank's attorney in December of 1961, whereupon the note was then collected without necessity of a law suit. It was the payment of this note which constitutes the alleged preference. Mr. Donald, President of defendant bank, readily concedes that he could have easily found out the true condition of Sinton, had he inquired at the places where he knew Sinton did business. All agree that a reasonably diligent inquiry would have uncovered the existing insolvency. Without more, we think the facts surrounding and attending the making and collection of the notes were sufficient to establish on the part of the bank reasonable cause to believe that the payments to it would effect a preference.

Implicit in the apparent lethargy of the bank was their reliance on the fact that they had obtained a solvent accomodation endorser on the note. Knowing that the bank was fully protected by the

endorsement they just did not care too much about Sinton's solvency. The bank was not looking to the credit of the bankrupt but to the credit standing of the accommodation maker who was well known to the bank as a man of wealth. The bank's attitude was precisely as the trial court indicated it to be. The trial court put it this way:

"The bank made the original loan on the strength of the endorsement of H. M. Ford who had a net worth of some forty times over the note; and because of this fact, the bank never really worried about the collection of its indebtedness."

At the conclusion of the evidence the trial court gave further indication of its reasoning when it made the following statement:

"If these people had not had a guarantor like Ford on the note, I would say * * * that they should have known."

 The tenor of the trial court's holding is that if a creditor obtains a solvent endorser on a note, such creditor is thereafter relieved from having to inquire into the solvency of the primary obligor. In other words, the only way a creditor who had a solvent endorser on debt paper could be forced to pay the trustee in bankruptcy for a preference would be for the trustee to show actual knowledge of insolvency. In so holding the court below is reading something into Section 60 of the Bankruptcy Act which simply is not there. Such an approach is unrealistic and would serve only to conveniently defeat the very purpose and intendment of Section 60. Collier's Bankruptcy Manual, 2nd Edition, page 613, says:

"A prime objective of any scheme for dealing with financially embarrassed estates of persons is equitable distribution of assets to creditors. That 'The theme of the Bankruptcy Act is equality of distribution' is a fundamental and long recognized principle."

It is crystal clear that in preference cases a creditor having knowledge of such facts concerning a debtor as would induce a person of reasonable prudence to inquire into the debtor's solvency is not relieved of that responsibility, just because there exists a solvent accommodation endorser.

The circumstances of this case raised more than a suspicion of danger; there were signs which to a reasonably prudent creditor pointed unerringly to insolvency, and the asking of a few questions would have disclosed that insolvency. In preference cases, notice of circumstances which would incite a man of ordinary prudence to an inquiry is notice of all the facts which a reasonably diligent inquiry would have disclosed. Pender v. Chatham Phenix National Bank and Trust Company, 2 C.C.A., 58 F.2d 968, 969.

The payment of the $8,600 constituted a voidable preference that depleted the estate of the bankrupt. Accordingly, the judgment of dismissal is reversed, and judgment is awarded to the trustee for $8,600, plus interest, from December 3, 1962.