Charles C. SHAW, Trustee in Bankruptcy
of Bemporad Carpet Mills, Inc.,
Appellant,

v.

UNITED STATES RUBBER COMPANY,
NAUGATUCK CHEMICAL DIVI-
SION, Appellee.

No. 22837.

United States Court of Appeals
Fifth Circuit.

May 31, 1966.

---

Clinton J. Morgan, Rome, Ga., for appellant.

Isaac C. Adams, Dalton, Ga., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and KILKENNY,* District Judge.

TUTTLE, Chief Judge.

This is an appeal from the judgment of the District Court, setting aside an order of the Referee in Bankruptcy avoiding an alleged preference in the sum of $5,655.15, paid by the bankrupt to United States Rubber Company, Naugatuck Chemical Division, within four months of bankruptcy.

The alleged preference arose by appellee's receipt, on January 6, 1964, of the proceeds of a check for the amount sued for as a payment on a past-due account. The company filed its voluntary petition,

---

* Of the District of Oregon, sitting by designation.

and was judged a bankrupt on March 18th, a little over two months later. The only contested issues in the Bankruptcy Court were the question of solvency at the time the payment was made,[1] and whether, assuming insolvency, the Appellee had in its possession facts sufficient to constitute reasonable cause for a belief that the debtor was insolvent as of January 6, 1964.[2]

The evidence adduced at the Referee's hearing, included: (a) the Bankrupt's consolidated balance sheet for the fiscal year ending June 30, 1963, a copy of which was received by United States Rubber Company in September of 1963, which balance sheet showed an excess of liabilities over assets to the extent of $106,778.00 (this statement showed assets at cost less depreciation); (b) testimony by an officer of the Appellee that the President of the bankrupt informed him that this balance sheet was incorrect and that a new balance sheet was to be prepared which would assign a true appraisal of the assets; (c) a subsequent pro forma balance sheet, based on the appraised value of the assets, and which showed a net worth of $169,133.00 instead of a deficit as shown on the earlier statement; (d) evidence that Appellee had been informed by the Hamilton National Bank of Chattanooga, a bank having no apparent interest in the litigation, that it considered the debtor to be a company with strong financial standing; (e) the fact that the check which, when paid, represented the alleged preference, was originally issued on December 10, 1963; that this check was returned to the Appellee on December 23rd because of a lack of funds in the bankrupt's account;

that on this same date, an officer of the Appellee talked to the Comptroller of the bankrupt, at which time the latter advised Appellee that he need not worry, that this non-payment was due to a mistake, and that Appellee should redeposit the check; that the check was redeposited and paid, and the bankrupt's account was debited on January 6, 1964.

At the hearing before the Referee, the Comptroller of the bankrupt company was permitted to testify, without objection, that the bankrupt was insolvent as of the time of the several financial statements. Both the December 14th, 1963, balance sheet and one prepared for February 8th, 1964, showed an insolvent condition, and the November, 1963 bank statement, also introduced into evidence, showed an overdraft in the amount of $18,200.09.

On this record, the Referee determined as a fact that, "From December 18th, 1963, up to and including March 18th, 1964, the bankrupt was insolvent." This, of course, included the date on which payment was made on the check. The trial court, on review of the Referee's order, determined that the evidence by the Comptroller, expressing his opinion of insolvency, and the several balance sheets were inadequate to warrant a finding of insolvency. We disagree, and conclude that this evidence was ample to warrant the Referee's determination of insolvency on the critical date in the absence of any effort by the creditor to place the fact of insolvency directly in issue.

With respect to the further requirement, however, to establish a voidable preference, we are constrained to

1. The applicable definition of insolvency is found in Section 1(19) of the Bankruptcy Act, 11 U.S.C.A., § 1(19), as follows:
   "A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not

   at a fair valuation be sufficient in amount to pay his debts."

2. Section 60(b) of the Bankruptcy Act, 11 U.S.C.A., § 96 provides:
   "Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."

agree with the District Court, first, that the determination of whether the Appellee had such notice as to constitute reasonable cause for a belief that the debtor was insolvent as of January 6th, was a matter which could be as readily determined by the trial court and, of course, by this court, as by the Referee; and, second, that under the circumstances known by the Appellee on January 6th, the trial court correctly determined that the Appellee was not bound by what an inquiry into the actual state of solvency would have determined.

One principle of law to be applied here was stated by us in Clower v. First State Bank of San Diego, 5th Cir., 343 F.2d 808, where, at page 811, we said: "In preference cases, notice of circumstances which would incite a man of ordinary prudence to an inquiry is notice of all the facts which a reasonably diligent inquiry would have disclosed." On the other hand, we must bear in mind the cautionary note expressed by the Supreme Court in Grant v. National Bank, 97 U.S. 80, at page 82, 24 L.Ed. 971, where the Court said: "To overhaul and set aside all [the debtors] transactions with his creditors, * * * because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would, in fact, have the effect of producing bankruptcy in many cases where it might otherwise be avoided."

■■ Whatever duty there was on this Appellee to make inquiry as to the solvency of its debtor, after having notice of the financial statement as of June 30th, was, it seems to us, fully met when the debtor voluntarily submitted a corrected statement. While this statement was not certified to by the accountant, because not in line with ordinary accounting procedures,[3] there is nothing in the record which would indicate that the debtor's appraised values were in-

flated or inaccurate. In this regard, it must be remembered that insolvency as described in the Bankruptcy Act deals with actual value of assets and not arbitrary values, such as represented by depreciated cost. If correctly made, of course, an appraisal of values is more accurate than arbitrary book values. In light of the reputation of the debtor as learned from the Hamilton National Bank, it cannot be said that the Appellee was put on notice to test the correctness of the appraised values. Finally, with regard to the "insufficient funds" check, it should be recalled that appellee was informed that the failure of payment was due to a "mistake" and that when the check subsequently was redeposited, it was paid by the drawee bank. We do not think that this circumstance either standing by itself or coupled with the September financial statement is sufficient to warrant a finding that the Appellee is to be charged with notice of insolvency.

■■ This is not a case in which the basic facts are in contest, or in which the questions of credibility arose in the Bankruptcy Court. It is a case where "the factual determination is primarily a matter of drawing inferences from undisputed facts." Clower v. First State Bank of San Diego, Texas, 5th Cir., 343 F.2d 808, 810. In such a situation, although the "clearly erroneous" limitation is still applicable, appellate review is much broader, see Mayo v. Pioneer Bank & Trust Co., 297 F.2d 392, 395 (5th Cir. 1962) (scope of review broader where decision turns not on what creditor in fact believed but on what he had reasonable cause to believe and where most of basic facts are undisputed); see also Galena Oaks Corp. v. Scofield, 218 F.2d 217, 219 (5th Cir. 1954), and it is the duty of the trial court and of this court to draw inferences themselves. We find no case in which the factual situation as

---

3. The accountant's refusal was based upon a professional accounting practice not to certify balance sheets in which the asset

values reflect a "fair market value" revaluation.

favorable to a creditor has been found sufficient to warrant the setting aside of a preference.

The Judgment of the trial court is affirmed.