**M. A. HOLAHAN, Trustee in Bankruptcy of William J. Gore, Plaintiff,**

v.

**William J. GORE et al., Defendant.**

**Civ. A. No. 15963.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 26, 1968.

Peter E. Duffy, Nicholas J. Gagliano, Metairie, La., for plaintiff.

James O. Manning, New Orleans, La., for defendant.

RUBIN, District Judge:

The trustee of William J. Gore, a bankrupt, brings this action to set aside a transfer of Gore's home to Gore's father placed of record on August 28, 1964, four days less than four months before Gore was placed in involuntary bankruptcy on December 24, 1964.

The story of the bankruptcy is a familiar one of an unsuccessful effort by an ambitious but relatively untrained young man to start a small business with inadequate capital. Gore started to work at age 17 as a plumber's helper. Two years later, at 19, he decided to try contracting to install plumbing in new houses for his own account as a plumbing contractor. He had saved "a couple of hundred" dollars, enough to buy a license and $100 in material for the first house. So he began to do business.

Gore was married, and he lived in a house provided for him by his parents.

With his parents' encouragement, he bought a rent house next door to his parents' home, and they lent him $5400 toward the $6000 down payment.[1] He was to put the house in repair and rent it but he never succeeded in finishing the job and he never got more than a single apartment in rentable condition.

He was not only unable to get ahead in his plumbing business; he sank behind. By January, 1964, he was insolvent or close to it. He had lost his investment, and, if a detailed analysis had been made, he would probably have had a deficit of several hundred dollars. During that part of 1964 when he was in business, he lost $6,600 and when a balance sheet was ultimately prepared in April 1965, he was $7,125.47 "in the red."

In an effort to raise money to buy his own home and get rid of the burdens of the venture in rental property, he listed the house for sale with a real estate broker in January, 1964. Gore's father and mother had known that he wanted to sell the rent house and had tried to dissuade him. They did not, however, know he was listing it with a broker until after he had already signed the listing. When Gore's mother learned of this, she asked him to convey the house to his father to settle the $5400 loan. On January 31, 1964, Gore signed a memorandum saying he had sold the house to his father and mother for $5400 cash although no cash in fact changed hands. The next day Mrs. Gore paid the broker $510 cash, one-half the commission that would have been due had the house been sold by him. After that date, Gore's parents made the payments on the mortgage. The utilities were transferred to the father's name. However, an act of sale conveying title was not passed until August 28, 1964.

Neither of Gore's parents is well educated or skilled in business affairs. Seben J. Gore, his father, is employed filling oil drums and works away from home. Mrs. Gore, his mother, is a short order cook. By industry and thrift they had accumulated nine parcels of rental property and $10,000 in savings.

They testified that they keep their savings at home in cash. Mrs. Gore testified that the principal reason to take the house from their son was to avoid it being sold to persons who would be undesirable neighbors; as owners, they could rent it and control occupancy.

The applicable legal principles are not disputed. In order to set aside a transfer by a bankrupt, the trustee must first establish that a preference was given one creditor over another. In order to do this, he must show that the debtor transferred his property to a creditor for an antecedent debt, while he was insolvent, within four months of the institution of bankruptcy proceedings, and that the creditor to whom the property was transferred thus obtained a percentage of his debt greater in amount than another creditor of the same class. Bankruptcy Act § 60(a), 11 U.S.C. § 96(a).

However, not every preferential transfer is voidable. To void the transfer, the trustee must show further that the creditor who received the preference had reasonable cause to believe that the debtor was insolvent at the time of transfer. Bankruptcy Act § 60(b), 11 U.S.C. § 96(b).

In this sense, a transfer of real property is made when it is so far perfected that no subsequent bona fide purchases could obtain from the debtor any rights superior to the rights of his transferee. Bankruptcy Act § 60(a), 11 U.S.C.

---

1. The plaintiff contends that there was no evidence of such an advance and, if so, no evidence that it was a loan rather than a gift. I am convinced the advance was made, not only by the direct testimony, but also because Gore had no other source of the funds. I am convinced it was a loan because I do not believe the defendants, who had 3 children, were themselves, relatively young, and were persons of modest means, would have made a gift in this amount. The fact that neither a note nor any other formal evidence of the indebtedness was executed is not sufficient under these circumstances to convince me to the contrary.

§ 96(a). The law of the state where the transfer was made controls the determination when a transfer is thus perfected. McKenzie v. Irving Trust Company, 1945, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305.

▋ Louisiana law is clear that unrecorded sales have no effect against third parties. McDuffie v. Walker, 1910, 125 La. 152, 51 So. 100; Humphries v. Royal, 1949, 215 La. 567, 41 So.2d 220; Blevins v. Manufacturers Record Publishing Co., 1958, 235 La. 708, 105 So.2d 392. Thus, the date on which the transferee's knowledge is material is the date of recordation of the act of sale.

▋▋ The trustee need not show that the creditor to whom the transfer was made actually knew of the transferor's insolvency; he need show only that the creditor had reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer. C. A. Swanson and Sons Poultry Co. v. Wylie, 9 Cir., 1956, 237 F.2d 16; 3 Collier on Bankruptcy, Sec. 60.53 (14th Ed.). If the facts and circumstances of the debtor's financial condition actually known to the creditor would put an ordinarily prudent person upon inquiry, the creditor is chargeable with knowledge of the facts that such an inquiry would reasonably be expected to disclose. Clower v. First State Bank of San Diego, 5 Cir., 1965, 343 F.2d 808; 3 Collier on Bankruptcy, supra.

▋▋ Thus, a creditor may not wilfully close his eyes in order to remain in ignorance of his debtor's financial condition; if he does, he is charged with notice of all of the facts that a reasonably diligent inquiry would have revealed. Clower v. First State Bank of San Diego, 5 Cir., 1965, 343 F.2d 808; Lang v. First National Bank of Houston, 5 Cir., 1954, 215 F.2d 118; Mizell v. Phillips, 5 Cir., 1957, 240 F.2d 738; Mayo v. Pioneer Bank & Trust Co., 5 Cir., 1961, 297 F.2d 392; 3 Collier on Bankruptcy, Sec. 60.53 (14th Ed.). Mere suspicion is not enough; however, the possession of facts that would be sufficient to put the creditor on notice satisfies the requirement that he have reasonable cause to believe. Prudential Insurance Company of America v. Nelson, 6 Cir., 1938, 96 F.2d 487; In re Steinberg, S.D.Cal., 1956, 138 F.Supp. 462.

▋ The trustee properly asserts that the existence of a family relationship between the debtor and the creditor may give rise to an inference that the creditor has information concerning facts sufficient to establish reasonable cause to believe the debtor is insolvent; but mere proof of relationship, without more, is not enough. See Irving Trust Co. v. Mann, S.D.N.Y., 1963, 5 F.Supp. 895; In re Singer and Sirotta, Inc., S.D.N.Y., 1939, 27 F.Supp. 276.

▋▋ There is a "fine line to apply in determining whether a creditor has 'reasonable cause to believe' that a debtor is insolvent. * * * [I]t is not necessary that a person benefitted by a transfer know positively that the result of the transaction will be to effect a preference; it is sufficient for a finding of reasonable cause that the person or his agent has knowledge of such facts as would induce a person of reasonable prudence to make inquiry, when such inquiry would have developed the facts essential to a knowledge of the situation. On the other hand, if the known facts should raise only a suspicion that the debtor might be insolvent, the test is not met." Mayo v. Pioneer Bank & Trust Company, 5 Cir., 1961, 297 F.2d 392, 394; cited with approval in Clower v. First State Bank of San Diego, 5 Cir., 1965, 343 F.2d 808.

▋ In determining the issue of reasonable cause, "every case must be viewed and interpreted in the light of its own facts, circumstances and surroundings." McDougal v. Central Union Conference Ass'n, 10 Cir., 1940, 110 F.2d 939; Moran Bros., Inc. v. Yinger, 10 Cir., 1963, 323 F.2d 699.

▋ Among the circumstances to be considered are "the relation of the parties, their intimacy or lack of it, the

usual or unusual nature of the transfer, the opportunities of the creditor for knowledge, the participation of the creditor, if any, in the business of the debtor, [and] the fairness or unfairness of the witnesses as to the disclosure of revelant facts within their knowledge * * *." Goetz v. Zeif, 1923, 181 Wis. 628, 195 N.W. 874, 878.

When the arrangements were made in January, 1964, I do not believe the defendants actually knew their son was insolvent, and I do not believe they had knowledge of facts that would induce a person of reasonable prudence to make inquiry.

Gore's major losses occurred later in 1964. Indeed, it would have required a most careful investigation to ascertain whether or not he was in fact insolvent in January, particularly if any value at all is attributed to his work effort, good will and know-how.

By August, 1964, a different situation prevailed. By that time, Gore was clearly insolvent. His supplier had refused to extend further credit and he was involved in negotiations with the supplier to enable him to continue in business. As soon as the creditor learned of the transfer of the real estate that had belonged to Gore, he refused to extend further credit to Gore unless Gore's mother would place a second mortgage on the house to secure Gore's indebtedness. Ultimately, the refusal to extend further credit resulted in the collapse of Gore's business and in the filing of the involuntary bankruptcy proceedings against him by that creditor.

But I do not think that the defendants knew this or that they had knowledge of facts that would have induced a person of reasonable prudence to make inquiry. They had taken physical possession of the property eight months earlier, their son had bought a home and moved out of their property, they had taken over the property in question to protect their own adjacent property, and there is no evidence that they knew a bit more of their son's financial condition than they knew in January. The delay in formally transferring the property was a result of inability to get the balance due on the first mortgage from its holder, an individual who maintained no formal office, and of procrastination. It was, I am convinced, neither due to design nor a desire to deceive creditors.

Certainly, there is no affirmative evidence that the Senior Gores knew a bit more in August than that their son had a modest plumbing business; that he was not making much money; that he lacked energy, initiative, or desire to make repairs to rental property; and that he preferred owning his own home to living in property furnished by his parents. It is conceivable that the defendant and his wife knew far more than the record indicates; it is conceivable that the plaintiff's suspicions are justified. But it is conceivable also, and a preponderance of the evidence of record indicates, that the defendants knew no more than they testified.

The burden of proof of the elements of a voidable transfer is on the plaintiffs. Republic National Bank of Dallas v. Vial, 5 Cir., 1956, 232 F.2d 785; Northern Neck State Bank v. Smith, 4 Cir., 1913, 205 F. 894; In re Klein Moffett Co., D.C.Md., 1928, 28 F.2d 523; Manly v. Southern Supply Co., 4 Cir., 1926, 14 F.2d 273.

They have failed to satisfy it. Therefore, the Clerk will prepare judgment for the defendant.